I ¿WHIPPLE, j.
Plaintiffs, Catherine Morris and Demetrius McKinney, Jr. appeal from a summary judgment rendered in favor of defendants, the East Baton Rouge Parish School Board, Mary Anne Tansil and the Louisiana Insurance Guaranty Association. For the following reasons, we reverse and remand.
FACTS AND PROCEDURAL HISTORY
In October of 1992, Demetrius McKinney, Jr., a fourteen year old special education student at Broadmoor Middle School in Baton Rouge, Louisiana, fell and injured his left knee while participating in a field trip practice skating event for the Louisiana Special Olympics. His mother, Catherine Morris, filed suit individually and on behalf of her minor son against Mary Anne Tansil, the field trip chaperone; the East Baton Rouge Parish School Board (“School Board”); United Community Insurance Company (“United”), the liability insurer of the School Board and Ms. Tansil; and the Special Olympics. In June 1998, Demetrius McKinney, Jr. was added as a party plaintiff in his own right, having reached the age of majority.
After suit was filed, United became insolvent and the Louisiana Insurance Guaranty Association (“LIGA”) was substituted as a party-defendant in its place. LIGA answered plaintiffs’ petition, affirmatively pleading that it was entitled to a credit and set-off to prevent duplication of recovery, pursuant to LSA-R.S. 22:1386. LIGA also asserted comparative fault on the part of plaintiffs.
At the time of the accident, Special Olympics had a policy of insurance with North American Specialty Insurance Company (“North American”) with liability limits of $1,000,000.00. On October 4, 1999, Demetrius McKinney, Jr. and his mother, Catherine Morris, settled their claims against Special Olympics and North American for a total payment of $5,000.00. On October 13, 1999, the suit against Special Olympics was dismissed with prejudice on plaintiffs’ motion. Plaintiffs | ..¡continued to pursue their claims against LIGA and its insureds, the School Board and Ms. Tansil (hereinafter collectively the “LIGA defendants”).
On March 14, 1999, the LIGA defendants filed a motion for summary judgment arguing that pursuant to LSA-R.S. 22:1386, plaintiffs’ settlement with North American for less than policy limits gave the LIGA defendants the right to be released from the litigation. Plaintiffs opposed the motion, but conceded that their damages did not exceed the $1,000,000.00 limits of the North American policy. In support of their motion, the LIGA defendants offered into evidence the petition filed by plaintiffs, the liability policy written by North American in favor of Special Olympics, and the settlement agreement entered into between plaintiffs, Special Olympics and North American, which specifically provided that the settling defendants did not admit liability. After a hearing on the motion, the trial court granted judgment dismissing plaintiffs’ suit with prejudice, concluding that the LIGA defendants were entitled to a credit in the full amount of the policy limits of the North American policy, which limits exceeded plaintiffs’ claims. From this adverse judgment, plaintiffs appeal.
On appeal, plaintiffs present two assignments of error for review. First, they contend the trial court erred in granting LIGA a credit for the full amount of the policy limits of North American in the absence of a finding that North Anerican’s insured, Special Olympics, was at fault in causing plaintiffs’ injuries. Further, they contend the trial court erred in concluding *50 that Demetrius McKinney was an insured under the North American policy.
STANDARD OF REVIEW
Summary judgment is proper only if the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, show there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966(B). A fact is material for purposes of Lsummary judgment if its existence or non-existence is essential to the plaintiffs cause of action under the applicable theory of recovery. Brown v. Manhattan Life Insurance Company, 2001-0147, p. 6 (La.6/29/01), 791 So.2d 74, 78.
Although the summary judgment procedure is now favored, the 1996 amendments to LSA-C.C.P. art. 966 have not changed the initial burden of proof, which remains with the mover. The burden does not shift to the non-moving party until the mover has demonstrated “an absence of factual support for one or more elements essential to the adverse party’s claim, action, or defense.” LSA-C.C.P. art. 966(C)(2). Only then does the amended law require the non-moving party to “produce factual support sufficient to establish that he will be able to satisfy his evidentia-ry burden of proof at trial.” LSA-C.C.P. art. 966(C)(2); Neuman v. Mauffray, 99-2297, p. 3 (La.App. 1st Cir.11/8/00), 771 So.2d 283, 285. If the nonmoving party fails to do so, there is no genuine issue of material fact, and summary judgment should be granted. LSA-C.C.P. arts. 966 and 967.
In determining whether summary judgment is appropriate, appellate courts conduct a de novo review of the evidence, employing the same criteria that governed the trial court’s determination of whether summary judgment is appropriate. Bell-South Telecommunications, Inc. v. Industrial Enterprises, Inc., 96-0682, p. 4 (La. App. 1st Cir.2/14/97), 690 So.2d 145, 148.
DISCUSSION
The first issue presented for review is whether and to what extent the LIGA defendants are entitled to a credit against any damages they might otherwise owe plaintiffs because of the settlement that plaintiffs entered into with Special Olympics and its insurer, North American. The parties agree that the resolution of this issue depends on our application of the Louisiana Insurance Guaranty Association Law, LSA-R.S. 22:1375, et seq. (“LGAL”), which was enacted in 1970 as a response to the serious problem of insurer insolvencies. See Ursin v. Insurance Guaranty Association, 412 So.2d 1285, 1288 (La.1982) (on rehearing). The purpose of LGAL is stated in LSA-R.S. 22:1376 as follows:
The purpose of this Part is to provide a mechanism for the payment of covered claims under certain insurance policies to avoid excessive delay in payment and to avoid financial loss to claimants or policyholders because of the insolvency of an insurer, to assist in the detection and prevention of insurer insolvencies and to allow the association to provide financial assistance to member insurers under rehabilitation or liquidation, and to provide an association to assess the cost of such operations among insurers.
Louisiana Revised Statutes 22:1378 requires a liberal construction of LGAL to effectuate the designated purpose “under section R.S. 22:1376, which shall constitute an aid and guide to interpretation.” Thus, the provisions of LGAL must be read in keeping with its overriding purpose of protecting claimants and policyholders from delays and financial loss occasioned by insurer insolvencies. Louisiana Revised *51 Statutes 22:1382(A)(2) provides that LIGA, the association created by LGAL, shall:
Be deemed the insurer to the extent of its obligation on the covered claims and to such extent shall have all rights, duties, and obligations of the insolvent insurer as if the insurer had not become insolvent.
Louisiana Revised Statutes 22:1379 sets forth definitions of important terms used in the act and pertinently provides at Subsection (3)(a):
“Covered claim” means an unpaid claim, including one for unearned premiums by or against the insured or agent, which arises out of and is within the coverage and not in excess of the applicable limits of an insurance policy to which this Part applies issued by an insurer, if such insurer becomes an insolvent insurer after September 1, 1970 .... (Emphasis added).
Under the provisions of LGAL, when a claim is made against an insolvent insurer, LIGA steps into the shoes of the insolvent insurer. In this case, it is treated as though it were United, the insolvent insurer that issued a liability insurance policy covering the School Board and Ms. Tansil, subject to a cap on liability and certain other express legislative limitations. LIGA claims that pursuant to one of these express limitations, it is entitled to a credit against any potential judgment |fiagainst it for the full policy limits of North American because of the settlement entered into between the plaintiffs, Special Olympics and North American. Specifically, LIGA bases its motion for summary judgment on the provisions of LSA-R.S. 22:1386, commonly referred to as the “non-duplication of recovery” provision of LGAL.
Louisiana Revised Statutes 22:1386 provides:
A. Any person having a claim against an insurer under any provision in an insurance policy, other than a policy of an insolvent insurer which is also a covered claim, shall be required to first exhaust his rights under such policy. Such other policies of insurance shall include but shall not be limited to liability coverage, uninsured or underinsured motorist liability coverage, or both, hospitalization, coverage under self-insurance certificates, coverage under a health maintenance organization or plan, preferred provider organization or plan, or similar plan, and any and all other medical expense coverage. All entities that are prohibited from recovering from the association, as specified in La. R.S. 22:1379(3)(b), shall also be considered insurers for purposes of this Subsection. As to the association, any amount payable by such other insurance shall act as a credit against the damages of the claimant, and the association shall not be liable for such portion of the damages of the claimant. (Emphasis added).
While the purpose of LGAL generally is to safeguard policyholders and injured parties against the insolvency of insurers, the non-duplication of recovery provision has a more specific purpose, both for the benefit of the public at large and LIGA itself. See Segura v. Frank, 93-1271, pp. 25-26 (La.1/14/94), 630 So.2d 714, 731-732.[3] The Louisiana Supreme Court has held that the purpose of LSA-R.S. 22:1386 is also to prevent double recovery and that the provisions of LGAL must be interpreted to protect claimants and policyholders and to advance their interests rather than the interests, of the association. *52 Senac v. Sandefer, 418 So.2d 543, 545-546 (La.1982); Hickerson v. Protective National Insurance Company of Omaha, 383 So.2d 377, 379 (La.1980).
With regard to the issue of the credit herein, LIGA asserts that, pursuant to LSA-R.S. 22:1386(A), it is entitled to credit for the full policy limits of the North American policy without bearing the usual burden of proving that Special Olympics was at fault and without a judicial resolution of the percentage of fault, if any, allocable to Special Olympics. In support of its position, LIGA cites Kenny v. Hoschar, 96-0112 (La.App. 4th Cir.5/29/96), 675 So.2d 807. In Kenny, plaintiff settled for less than policy limits with her own uninsured motorist insurer and then pursued LIGA as the insurer of the offending tort-feasor, the same person for whose negligence plaintiffs UM carrier had responded in payment. In reversing the trial court’s granting of summary judgment and dismissal of plaintiffs claim against LIGA, the court of appeal ruled that LIGA was entitled to a credit for the full amount of the policy limits of the UM carrier and could be liable to plaintiff only for damages in excess of the policy limits of plaintiffs UM carrier. Kenny, 96-0112 at pp. 4-6, 675 So.2d at 809-810; see also Stagg v. Strauss, 94-670, pp. 3-4 (La.App. 3rd Cir.12/7/94), 647 So.2d 621, 623. While we do not quarrel with the result reached in the Kenny ease, we do not believe it dictates the result herein.
The Kenny case involved two insurers whose coverage extended to the same tort-feasor and the same conduct. As demonstrated therein, the non-duplication provision of the statute legislatively makes the UM insurer primary and LIGA secondary, essentially occupying the position of an excess insurer. Thus, the court correctly recognized that any liability of LIGA would only result by virtue of coverage for the exact same conduct for which the UM carrier had already responded, by virtue of settlement with plaintiff. Accordingly, plaintiffs settlement with the UM carrier for less than policy limits and pursuit of LIGA for the difference on the claim was properly rejected, as such an approach would be manifestly prejudicial to LIGA. Kenny, 96-0112 at pp. 4-6, 675 So.2d at 809-810.
Notably, most of the reported Louisiana cases concerning the non-duplication of recovery provision of LGAL deal with this scenario, i.e., where the ^credit being sought by LIGA is based upon a plaintiffs settlement with a UM carrier. The cases hold that any claim against LIGA and against the UM carriers requires exhaustion of the policy of the UM carrier before a plaintiff can recover against LIGA.[4] However, in this case, LIGA seeks full credit for plaintiffs’ settlement with an insurer whose potential liability is based on the conduct of a separate, different alleged tortfeasor. We deem this distinction significant.
*53 LIGA also relies upon the decision of Knowles v. Barnes, 95-1586 (La.App. 3rd Cir.4/3/96), 671 So.2d 1123 as support for its argument that it is entitled to a credit for full policy limits. In Knowles, a driver lost control of a vehicle as a result of diesel oil spilled on the roadway by H & B Well Service, Inc. The errant vehicle struck another vehicle in which plaintiff Knowles was riding as a guest passenger. Knowles sued the company that spilled the oil, H & B, and the driver of the car that hit the spill and lost control. One of H & B’s insurers became insolvent; thus, LIGA was substituted for the insolvent insurer. Prior to trial, plaintiff settled with the insurer of the offending driver, the insurer of the driver of the vehicle in which she was a guest passenger, and one of two insurers of H & B. No contention was made by LIGA that plaintiff could not proceed to trial against it because of the settlements with other tortfeasors. After a trial on the merits, the trial court found that H & B was solely hable for the accident. Notwithstanding that there was no finding of fault against the settling defendants, the trial court 19gave LIGA a credit for the amounts paid in settlement.[5] Knowles, 95-1536 at pp. 2-3, 7-8, 671 So.2d at 1124, 1126-1127. We find the holding in Knowles clearly supported by the last sentence of LSA-R.S. 22:1386(A), entitling LIGA to a credit for “any amount payable by such other insurance,” which authorizes a credit to LIGA for settlements actually received from solvent insurers of potential solidary obligors of the party insured by LIGA. See Knowles, 95-1536 at pp. 8-9, 671 So.2d at 1127.
We agree that granting a dollar-for-dollar credit to LIGA when a plaintiff has settled with a potential solidary obli-gor of LIGA’s insured fosters the purpose of LSA-R.S. 22:1386, ie., to prevent duplication of recovery and preserve LIGA funds. However, such a result does not necessarily dictate that LIGA would be entitled to a credit of the full policy limits of the North American policy herein.
In determining the proper operation of the non-duplication of recovery provision of LGAL in this case, we note that adopting LIGA’s position that it should get a credit for the full policy limits of the insurer of any settling party without any stipulation or judicial resolution as to the fault of the settling party would put LIGA in a position far superior to the position that United would have been in if United, the original insurer, had not become insolvent. LIGA’s approach would give LIGA an advantage that no other defendant would have and, in the event of a plaintiffs nuisance settlement with an insurer with high limits, clearly would give LIGA a windfall. The net effect of our adoption of LIGA’s suggested approach would likely be a serious disincentive for any plaintiff to settle with any potential solidary obligor for less than policy limits, even where the fault of that potential defendant might be questionable or negligible at best. Inasmuch as settlements are favored and to be encouraged, we find the statutory h (Interpretation urged by LIGA to be at odds, not only with the statutory language read in its entirety, but also with the underlying policy of LGAL — to protect policyholders and claimants in instances where an insurer has become insolvent. Instead, LIGA’s suggested remedy would advance the interests of LIGA to the substantial disadvantage of plaintiffs.
In our view, the appropriate resolution of the issue before us simply requires that we interpret the statute as a whole, in *54 light of the purpose of the non-duplication statute.
First, we note that the last sentence of LSA-R.S. 22:1386(A) provides that LIGA is entitled to a credit for amounts “payable” by other insurance. Considering this language, we conclude that until there is a judicial declaration assessing damages and allocating fault (or a stipulation with respect thereto), there has been no determination of what is “payable” under a policy insuring the conduct of a party other than LIGA’s insured—• beyond those amounts deemed admitted as payable by virtue of the actual transmission of a settlement check. However, to the extent that plaintiffs actually receive funds as payment for damages sustained in an accident for which plaintiffs pursue a claim against LIGA, we conclude that payment of such settlement funds demonstrates that these funds were “payable” within the meaning of the statute, up to the amount actually paid, absent a situation where the species of damages received from the settling party differs from the species of damages recoverable or actually awarded against the non-settling party. See e.g, Senac, 418 So.2d at 545-546; see also McMahon v. Louisiana Insurance Guaranty Association, 596 So.2d 1384, 1391-1393 (La.App. 1st Cir.), writ denied, 604 So.2d 970 (La.1992).
Thus, stated differently, LIGA is not required to prove liability of the settling party at a trial to be entitled to the dollar-for-dollar credit statutorily granted by the last sentence of LSA-R.S. 22:1386(A), an important factor for l^LIGA and other parties to consider in assessing the risks and benefits of settlement. Accordingly, under the facts presented herein, we conclude that LIGA is entitled to a credit for at least the amount of the settlement actually paid to plaintiffs herein. Thus, the statutory scheme is intact inasmuch as plaintiffs get no “duplication of recovery,” and LIGA gets credit for what has actually been paid.
Moreover, considering the first sentence of LSA-R.S. 22:1386(A), we likewise conclude that, in the absence of a judicial determination of fault on the part of a settling party, there can be no finding that plaintiffs had a “claim” against the settling party’s insurer and, consequently, that plaintiffs had a corresponding duty to “exhaust [their] rights under such policy.” Thus, we acknowledge that where there is a later determination of fault on the part of the settling party, LIGA may be entitled to a credit greater than the actual proceeds paid in settlement.
In so holding, we recognize that in some cases, the actual fault of the settling party, and corresponding obligation of its insurer had the matter proceeded to trial, may not be fairly represented by the settlement. Since LIGA succeeds to the rights and responsibilities of the insurer of the non-settling party, in those instances, LIGA should have the right to proceed to trial in an attempt to obtain a judicial determination of fault that would result in a larger credit than that represented by the actual settlement. In that event, it should be required to prove the liability of the settling defendant, thereby entitling LIGA to the full benefit it would have received if plaintiffs had fulfilled their duty of “exhaust[ing their] rights” under the policy of the settling insurer.
On the other hand, if LIGA proceeds to trial and seeks an allocation of fault of the settling defendant, and the court allocates no fault whatsoever to the settling defendant or a percentage of fault less than that represented by the payment made, LIGA would nonetheless be entitled to a credit, pursuant to our interpretation of |1gthe last sentence of LSA-R.S. *55 22:1386(A) above, for the amount actually paid in settlement, as “any amount payable” under the statute.
In sum, we conclude that when, as here, there has been a settlement for less than policy limits under a policy insuring a tort-feasor other than the one insured by LIGA or for whose judicial fault LIGA would not be responsible, and when, as here, there has been neither a finding of fault regarding the settling defendant or a stipulation of fault, LIGA is entitled to at least a dollar-for-dollar credit for the amount of the settlement received by plaintiff. Nonetheless, LIGA is not precluded from attempting to prove at trial the liability of the settling defendant to increase the credit to which LIGA would be entitled, i.e., to the amount plaintiffs would have received if plaintiffs herein had “exhaust[ed their] rights under such policy.” We conclude that this result best reconciles the competing policy interests and follows the language of the statute and the legislative intent recognized by our Supreme Court.
In their second assignment of error, plaintiffs contend that the trial court erred in its statements finding Demetrius McKinney, Jr. himself to be an “insured” for purposes of LGAL under the North American policy. The LIGA defendants do not contest plaintiffs’ argument in this respect and agree that any liability to plaintiffs under the North American policy arises by virtue of plaintiffs’ claims against the true insured, Special Olympics. Our review of the North American policy leads us to the same conclusion. Accordingly, to the extent that the trial court’s judgment may have been based upon an erroneous interpretation of the North American policy, plaintiffs’ assignment of error has merit.
DECREE
For the above and foregoing reasons, the judgment of the trial court granting summary judgment in favor of defendants and dismissing plaintiffs’ claims is reversed, and the matter is remanded to the trial court for further proceedings | -^consistent with this opinion. Costs of this appeal in the amount of $ 1,253.56 are assessed against the defendants, East Baton Rouge Parish School Board, Mary Anne Tansil and the Louisiana Insurance Guaranty Association.
REVERSED AND REMANDED.

. Although the Segura case dealt with the statute in the context of a UM claim, its exegesis regarding legislative intent to safeguard LIGA funds is equally applicable here.

. See e.g., Stagg, 94-670 at pp. 3-4, 647 So.2d at 623; Blackwell v. Williams, 618 So.2d 477, 479 (La.App. 4th Cir.1993); Fishman v. Automotive Casualty Insurance Company, 94-0484, p. 3 (La.App. 4th Cir.9/29/94), 643 So.2d 805, 807. The language in these cases is often very broad. For-instance, in Fishman, the court held “the obvious purpose of the statute is to make LIGA a 'last resort’ source of recovery. The legislature obviously wishes for plaintiffs to tiy to make their damages whole, or as nearly as whole as possible, from insurance sources other than LIGA prior to seeking recovery from LIGA.” Fishman, 94-0484 at p. 2, 643 So.2d at 807. However, such broad statements must be regarded as dicta if applied to situations other than those of UM, or other collateral coverages where, a solvent insurer is being called upon to respond for a "covered claim.”

. It is not clear from the reported decision whether the settlements were for policy limits, but from the dollar amounts of the settlements, it appears that all were not for limits.