847 So.2d 698 (2003)
Martinell JACKSON and Ida Williams
v.
Jerry J. COCKERHAM, Lou Gioe Trucking d/b/a Chalmette Truck Corporation and U.S. Capital Insurance Company.
No. 2002-CA-2493.
Court of Appeal of Louisiana, Fourth Circuit.
May 21, 2003.
Rehearing Denied July 1, 2003.
*699 Tamara Kluger Jacobson, Robert G. Harvey, Sr., New Orleans, LA, Counsel for Plaintiffs/Appellees (Martinelle Jackson and Ida Williams).
Patrick E. Moore, Michael E. Fisse, Daigle Fisse, PLC, Covington, LA, Counsel for Defendant/Appellee (Louisiana Insurance Guaranty Association).
Walter I. Willard, Bobbie F. Mason, The Willard Firm, PLC, New Orleans, LA, Counsel for Defendant/Appellee (Regional Transit Authority).
Court composed of Judge CHARLES R. JONES, Judge MICHAEL E. KIRBY, Judge TERRI F. LOVE.
MICHAEL E. KIRBY, Judge.
This case arises from an alleged impact between a tractor/trailer and a Transit Management of Southeast Louisiana ("TMSEL"/ "RTA") bus in Orleans Parish on 13 February 1996. On 27 January 1997 the instant suit was filed on behalf of the bus driver, Mrs. Ida Williams, and a bus passenger, Martinelle Jackson. The suit named Jerry Cockerham as the driver of the tractor/trailer, along with his employer, Lou Gioe Trucking. U.S. Capital Insurance Company was named as the insurer for the tractor/trailer.
On 22 August 1997 U.S. Capital was placed in rehabilitation and the petition was amended to name the Louisiana Insurance Guaranty Association ("LIGA") as the successor in interest to U.S. Capital Insurance Company.
Lexington Insurance Company ("Lexington") issued a $14 million liability policy which covered the TMSEL bus. There was no UM rejection form signed at the issuance of the Lexington policy.
*700 It is undisputed that the Lexington policy includes a self-insured retention by TMSEL in the amount of $1 million. In other words, TMSEL is self-insured for the first $1 million of liability. Thereafter, the Lexington policy provides an additional $14 million of excess coverage.
After the filing of this lawsuit and answers, LIGA filed a Motion for Summary Judgment seeking enforcement of the "LIGA Credit Statute," LSA-R.S. 22:1386, to require the plaintiff to recover against all other sources before the statutory LIGA limits would be available. Specifically, LIGA argued that the $1 million self-insured retention and the $14 million Lexington policy provided a total of $15 million in UM benefits to be exhausted before the LIGA limits would be available. Lexington Insurance Company filed an Opposition and Cross Motion and plaintiffs filed a general Opposition. At this point in the litigation, TMSEL was not a party to the litigation.
The rule on the Motion for Summary Judgment was heard on 26 October 2001. A Judgment was rendered in favor of LIGA finding that there was $1 million in UM coverage under the self-insured retention by TMSEL and $14 million in UM coverage provided by Lexington. The trial court ruled that LIGA was entitled to a credit for the full $15 million in UM coverage, and dismissed LIGA from further proceedings upon the stipulation by plaintiffs that the total damages did not exceed $15 million.
At that point, it became apparent that TMSEL was a necessary party to the litigation with respect to the plaintiffs' ability to recover damages in the event of judgment. Accordingly, the plaintiffs timely moved for a new trial as to the Motion for Summary Judgment, thereby suspending the effect of the Judgment. Plaintiffs amended their petition to name TMSEL, and TMSEL answered the lawsuit.
While the Motion for New Trial was still pending, LIGA filed another Motion for Summary Judgment, this one naming TMSEL. LIGA urged the same argument set forth in the first Motion: that under the clear wording of the LIGA statutes, the self-insured retention by TMSEL and the UM limits of the Lexington policy were primary to the statutory limits guaranteed by LIGA.
On 6 September 2002, the second LIGA Motion for Summary Judgment was heard and the entire record offered into evidence. The trial court ruled in favor of LIGA in the fashion it had at the first hearing, dismissing LIGA from further proceedings. A Judgment was signed in accordance with that ruling. The Motion for New Trial was also granted at that time.
TMSEL appeals this Judgment and alleges error.

STATEMENT OF THE LAW
Louisiana Revised Statute 22:1386(A), which deals with nonduplication of recovery or credit under the articles of the Insurance Guaranty Association, states:
Any person having a claim against an insurer under any provision in an insurance policy, other than a policy of an insolvent insurer which is also a covered claim, shall be required first to exhaust his rights under such policy. Such other policies of insurance shall include but shall not be limited to liability coverage, uninsured or underinsured motorist liability coverage, or both, hospitalization, coverage under self-insurance certificates, coverage under a health maintenance organization or plan, preferred provider organization or plan, or similar plan, and any and all other medical expense coverage. All entities *701 that are prohibited from recovering against the association, as specified in R.S. 22:1379(3)(b), shall also be considered insurers for purposes of this Subsection. As to the association, any amount payable by such other insurance shall act as a credit against the damages of the claimant, and the association shall not be liable for such portion of the damages of the claimant. (Emphasis added.)
La. R.S. 22:1379(3)(b), referred to in the body of 22:1386 above, specifically mentions entities that have a certificate of self-insurance. TMSEL is an entity that is self-insured. Therefore, for the purposes of LIGA matters, section 1386 controls and TMSEL is an "insurer" for the amount of the self-insured retention.
TMSEL argues on appeal that the self-insured retention cannot be a "policy" for the purposes of the application of the LIGA credit statute, La. R.S. 22:1386. In so arguing, they rely upon the cases of Tybussek v. Wong, 96-1981 (La.App. 4 Cir. 2/26/97), 690 So.2d 225, and Hebert v. Williams, 526 So.2d 835 (La.App. 3 Cir. 1988). These cases are distinguishable.
In Hebert, the coverages were similar to that of TMSEL in the instant matter. The Hebert tribunal, however, was not interpreting the applicable LIGA statute herein, La. R.S. 22:1386. Instead, the Hebert court cited La. R.S. 22:1406 in determining that an employer had discretion whether to offer UM benefits to a claimant under a self-insured retention. The employer, Southern Pacific, had a liability policy with Liberty Mutual for $12 million that included a self-insured retention of $8 million. The Liberty Mutual policy was issued without a written UM rejection. Plaintiffs sued for a personal injury claim arising from the use of a Southern Pacific vehicle, alleging that their UM recovery should be allowed from the self-insured retention. Plaintiffs also alleged that the Liberty Mutual UM limits should be available to them without a set-off for the self-insured retention, citing provisions of the Liberty Mutual contract as justification. The court determined that the Liberty Mutual policy, in the absence of a written UM waiver, did provide $12 million in UM benefits. The court held further, however, that since Southern Pacific was self-insured (i.e. not an insurer) that they were not required to provide UM coverage under § 1406 and were therefore not liable to plaintiffs. The court also found that the Liberty Mutual contract did not provide for the "drop down" urged by the plaintiffs and that UM liability would only attach after the self-insured retention amount was exhausted.
Hebert was rendered prior to the recent amendment to La. R.S. 22:1386, the LIGA credit statute.[1] Accordingly, the present case is distinguishable as it is a LIGA matter where La. R.S. 22:1386(A) requires a credit for the entire self-insured retention amount held by TMSEL and the limits of the Lexington policy.
As for the history which motivated the legislature to amend Article 1386, we must look at the Louisiana Supreme Court case of Bowens v. General Motors Corp., 608 So.2d 999 (La.1992), where the Supreme Court invited the legislature to change the statute to its present form.
In Bowens, General Motors ("GM") was held to be the statutory employer of a worker's compensation claimant. GM was resultantly liable to the claimant for compensation benefits. LIGA was the guarantor *702 for an insolvent compensation insurer for the claimant's immediate employer. The issue before the court was whether § 1386 would require the claimant to recover from GM prior to recovering from LIGA. The application of § 1386 was unclear given the fact that GM was self-insured for worker's compensation purposes, and § 1386 did not include specific reference to self-insured, but rather only to "insurance." The Bowens court held that § 1386 did not contemplate inclusion of self-insurers. Specifically, the court found that self-insurance is not "insurance" and that § 1386 was unambiguous in applying only to those persons having claims against "an insurer under any provision in an insurance policy." The court held that clearly "plaintiff's claim against GM is not against an `insurer'..." Bowens, 608 So.2d at 1003. The court also stated as follows:
In the absence of an express legislative pronouncement to the contrary, we hold that the presence of a self-insurer does not preclude liability on the part of LIGA ...
Bowens, 608 So.2d at 1004
In reaction to Bowens, the "express legislative pronouncement" came in the form of the amendment to § 1386 as set forth above. It is of particular note that the amendment does not simply add self-insurance to the list of available coverages. The amendment also sets forth that "all entities that are prohibited from recovering against the association, as specified in R.S. 22:1379(3)(b), shall be considered insurers for purposes of this Subsection." The list of entities in La. R.S. 22:1379(3)(b) includes those covered by a certificate of self-insurance.
The application of § 1386 to the instant facts, therefore, confers the status of "insurer" upon TMSEL. This distinction is pivotal to the general intent that LIGA should always be the obligor of last resort. The distinction also separates the instant facts from Hebert and similar cases that insulate self-insurers from compulsory UM coverage when the provisions of amended § 1386 are read with reference to the provisions of § 1406.[2]
Until the amendment, self-insurers were protected from the imposition of § 1406 UM obligations because they were not "insurers." Now, for the purposes of LIGA claims, self-insurers are "insurers" by statutory definition. It is a familiar rule of statutory interpretation that laws in pari materia must be construed in reference to each other. Smith v. Cajun Insulation, 392 So.2d 398 (La.1980). Moreover, Louisiana Civil Code article 13, states that "Laws on the same subject matter must be interpreted in reference to each other." In addition, La. Civ.Code article 9 states: "When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature." In this case, the clear terms of Articles 1386 and 1406 read together are unambiguous and lead to only one result: TMSEL is an "insurer" and it must provide UM coverage unless specifically rejected. Accordingly, the plaintiffs must exhaust all $15 million in UM coverage afforded collectively by TMSEL and by Lexington Insurance Company before LIGA has exposure.

Uninsured Motorist Coverage
We also note a public policy argument in favor of enforcing UM benefits in favor of plaintiffs. Louisiana jurisprudence contains a line of cases which lend credence to *703 the public policy support of UM protection for bus patrons. In Trobaugh v. Migliore, 597 So.2d 494 (La.App. 1 Cir.1992), the plaintiff was injured while driving a rented vehicle. The rental company, Enterprise, was a qualified self-insured that had a $9.5 million excess policy with Travelers Insurance and a $500,000 self-insured retention.
The Enterprise rental agreement provided the plaintiff with a provision that extended liability coverage from the self-insured retention level rather than through the Travelers' policy. The First Circuit concluded that by providing the lessee with liability coverage, Enterprise was concomitantly required by La. R.S. 22:1406 to offer the plaintiff the written opportunity to reject UM coverage. Since Enterprise failed to do so, UM coverage was imposed in favor of the plaintiff, i.e. the UM coverage was paid under the $500,000 self-retention level.
Bus patrons boarding a TMSEL bus pay a fare. TMSEL extends liability coverage in favor of the patrons under the self-insured retention in exchange for the fare. Thus, the bus patron is in a position analogous to a person who rents a car. As a matter of public policy, bus patrons are to be treated with the same care as someone who rents a car. Likewise, bus patrons should be able to recover under the self-insured liability level regardless of whether they are injured by the negligence of TMSEL (where they could avail themselves to the self-insured liability level) or whether they were injured by the negligence of an uninsured third party.
The Trobaugh opinion shows a willingness to extend UM coverage to the full extent contemplated under the statute for rental patrons. Bus patrons have no similar protection, even though they pay a fare. The Louisiana Supreme Court recognizes the public policy justifications for UM coverage as follows:
Uninsured motorist coverage embodies a strong public policy in this state ... The object of the statute is to promote recovery damages for innocent automobile accident victims by making UM coverage available for their benefit as primary protection when the tortfeasor is without insurance, and as an additional or excess coverage when he is inadequately insured. To carry out this objective of providing reparation for those injured through no fault of their own, this Court has held the statute is to be liberally construed.
Taylor v. Rowell, 98-2865 (La.5/18/1999), 736 So.2d 812, 816.
In addition, the Louisiana Supreme Court has imposed upon common carriers that "highest degree of care towards its passengers." Luckette v. Bart's On The Lake, Ltd., 602 So.2d 108 (La.App. 4 Cir. 1992). That duty incorporates a public policy requirement that TMSEL should be required to provide UM coverage to its passengers in this and similar instances. Without such coverage, bus passengers are deprived of their informed consent to travel on a vehicle naked of any insurance coverage to protect them from uninsured motorists. (See Taylor v. Rowell, supra, where the Supreme Court held that "an insurer must place the insured in a position to make an informed rejection of UM coverage." 736 So.2d at 816.)

NEW TRIAL
TMSEL argues that the motion for new trial which brought them into this litigation should not have been granted. La.Code of Civil Procedure Article 1973 states:
A new trial may be granted in any case if there is good ground therefor, except as otherwise provided by law.
Here, the trial court granted a new trial because other insurance policies were discovered. *704 There is nothing contrary to the law in the trial court's action. TMSEL does argue that plaintiff knew of TMSEL's involvement in this case and therefore doesn't meet the requirement for peremptory grounds for granting of a motion for new trial found in La. C.C.P. art.1972(2). Nevertheless, based upon La. C.C.P. art. 1973, we find no abuse of discretion in the trial court's granting of a motion for new trial. Because we are bound by our standard of review, we cannot disturb such a finding.
For the aforementioned reasons, this matter is affirmed in its entirety.
AFFIRMED.
NOTES
[1] The statute was amended by Acts 1999, No. 477. The legislature included the proviso that the amendments were applicable to all pending claims and to all pending insurance company liquidation proceedings.
[2] La. R.S. 22:1406(D) governs the issuance of uninsured motorist coverage.