990 So.2d 68 (2008)
Irvin HADLEY
v.
CENTEX LANDIS CONSTRUCTION CO., INC., The Travelers Insurance Company and Gulf South Piling & Construction, Inc.
Centex Landis Construction Co., Inc.
v.
Fidelity and Casualty Company of New York, Reliance Insurance Company, National Union Fire Insurance Company and First Financial Insurance Company.
Nos. 2007-CA-0915, 2007-CA-0916.
Court of Appeal of Louisiana, Fourth Circuit.
July 23, 2008.
*69 Michael E. Parker, Allen & Gooch, Lafayette, LA, for Louisiana Insurance Guaranty Association, as The Alleged Insurer of Centex Landis Construction Company, Inc., et al.
Stephen N. Elliott, Bernard, Cassisa, Elliott & Davis, APLC, Metairie, LA, for Louisiana Insurance Guaranty Association and its Insured, Gulf South Piling & Construction, Inc.
Peter J. Butler, Peter J. Butler, L.L.C., Gretna, LA, Peter J. Butler, Jr., Richard G. Passler, Ralph T. Rabalais, Breazeale, Sachse & Wilson, L.L.P., New Orleans, LA, for Centex Landis Construction Company, Inc.
(Court composed of Judge CHARLES R. JONES, Judge DENNIS R. BAGNERIS, SR., and Judge TERRI F. LOVE).
CHARLES R. JONES, Judge.
Centex Landis Construction, Inc., seeks reversal of a district court judgment which granted Louisiana Guaranty Insurance Association's (LIGA's)[1] motion for summary judgment. We affirm.
Centex Landis Construction ("Centex") was the general contractor on the construction of the Harrah's land-based casino located at the foot of Canal Street in New Orleans, Louisiana. Centex subcontracted out all the actual construction work on the project and directly employed supervisory personnel only. One of the subcontractors hired by Centex was Gulf South Piling and Construction, Inc. ("Gulf South"). Gulf South was hired to form and pour most of the concrete necessary for the construction of the land-based casino.
Mr. Irvin Hadley, the original plaintiff in the instant suit, was the driver of a concrete mixer truck for Laforge Concrete Company. He alleged that on or about April 5, 1995, he delivered a supply of cement to the site of the permanent Harrah's Casino in New Orleans, Louisiana. However, Mr. Hadley alleged that while he was still at the construction site, he stepped on a board that was covering an open hole. He alleges that the board covering the hole broke under his weight and that he fell partially into the hole, sustaining physical injuries, specifically to his back and leg.
Mr. Hadley filed suit against Centex, Gulf South, several of Centex's subcontractors, and their respective insurers seeking recovery for his injuries.
Centex, one of the named defendants in the original suit, filed a declaratory action against all of the insurers of the various defendants, including Reliance Insurance ("Reliance"), Fidelity Casualty Company of New York, National Union Fire Insurance Company and First Financial Insurance Company. In its petition, Centex alleged that it was entitled to contractual defense and indemnity, based on the contract between Centex and Gulf South. Centex also filed a claim against Reliance as Gulf South's insurer on the contractual indemnity claim, and a separate action against Reliance based on the fact that Centex was named as an additional insured under the insurers' policies of insurance.
Subsequently, Reliance became insolvent and went into liquidation on October 3, 2001. On January 22, 2002, Centex filed a petition for declaratory judgment and damages against its insurer and other defendants.
Subsequently, on August 15, 2003, Centex amended its petition for declaratory *70 judgment to substitute LIGA in the place of Reliance, due to Reliance's insolvency.[2]
Centex averred that based upon Gulf South and Reliance/LIGA's refusal to defend and indemnify it, that Centex would bear the cost of its own defense in the suit until such time as the court enforced the terms of the Centex/Gulf South contract and the Reliance insurance policy.
Centex also averred that it reached a settlement agreement with Mr. Hadley for $350,000.00. Travelers, Centex's insurer, issued a check on December 29, 2004, as a means of keeping track of amounts expended for costs of Centex's defense under the one million dollar policy deductible. Travelers has since been reimbursed by Centex for all such funds advanced, as the deductible has not been met.
LIGA, as insurer for Gulf South, filed a motion for summary judgment based on its assertion that Centex's settlement with Mr. Hadley, as well as its ongoing costs of defense, were paid by Travelers as Centex's insurer, and thus triggered the non-duplication of recovery provision of LIGA.
Centex, in opposition to LIGA's motion, countered that it and not Travelers, had borne one hundred percent of its costs of defense and the settlement it reached with Mr. Hadley. Centex averred that it had no insurance coverage, other than the Reliance policy, for the first one million dollars of the claim. Hence, Centex maintained that recovery from LIGA would not constitute a double recovery within the meaning of La. R.S. 22:1386.[3]
Centex averred that if one of the other defendants in this matter (Omnibus and/or Boh Bros.) were ultimately found to be partly responsible for Mr. Hadley's injuries, that it would first collect from those defendants and/or their insurers before it can collect from LIGA. However, Centex filed this timely appeal in which it asserts *71 that LIGA's motion for summary judgment was granted in error.
In the instant matter, Centex asserts three assignments of error: (1) that the district court erred in concluding that Centex was self-insured and/or that the $1,000,000.00 deductible in the Travelers insurance policy was actually a certificate of self-insurance; (2) that the district court erred to the extent that it concluded the payment of $350,000.00 to Mr. Hadley was made by Travelers on behalf of Centex; and (3) the district court erred in concluding that LIGA was entitled to summary judgment under the provisions of La. R.S. 22:1386(A).

DISCUSSION
The appellate court reviews summary judgments de novo under the same criteria governing the trial court's consideration of whether summary judgment is appropriate. Shambra v. Roth, 04-0467, p. 2 (La. App. 4 Cir. 9/29/04), 885 So.2d 1257, 1259 citing Reynolds v. Select Properties, Ltd., 93-1480, p. 2 (La.4/11/94), 634 So.2d 1180, 1182; Alexis v. Southwood Ltd. Partnership, 00-1124, p. 2 (La.App. 4 Cir. 7/18/01), 792 So.2d 100, 101. The summary judgment procedure is designed to secure the just, speedy and inexpensive determination of actions. Accordingly, a motion for summary judgment should be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law. See La. C.C.P. art. 966(A)(2), and La. C.C.P. art. 966(B).
Of relevant importance in the instant appeal are three documents: (1) the construction contract between Centex and Gulf South, and two policies of insurance (2) the Travelers' policy in which Centex is named as additional insured and (3) the LIGA/Reliance's policy of insurance for which Gulf South is the insured.

The Contract between Centex and Gulf South
The contract between Centex and Gulf South contains two provisions which pertain to the instant appeal. The first provision of the contract specifies that Gulf South is required to procure liability insurance with policy limits of at least $1,000,000.00, and that Gulf South designate that Centex is an additional insured. Gulf South complied with the aforementioned contract provisions and obtained insurance with the required policy limit by purchasing insurance from Reliance and also designating that Centex be listed as an additional insured.
The second provision of the contract requires that Gulf South indemnify and defend Centex for any claim or injury arising out of work performed by Gulf South, unless the claim or injury was caused by the sole negligence of Centex. The indemnity provision also requires that Gulf South indemnify Centex for all amounts expended by Centex in settling or compromising indemnified claims, and for all reasonable costs of defense, litigation, and attorneys' fees.

The Travelers' Insurance Policy:
The Travelers policy issued to Centex bears the number of TC2J-GLSA-231T5227-TIL-94. The stated policy specifies the deductible as $1,000,000.00. Centex averred that the Travelers policy does not contain any "drop down"[4] provision *72 which, as asserted by Centex, "drops down to the first dollar upon the insolvency of the underlying carriers." Centex asserted that the Travelers policy does not provide it coverage until the $1,000,000.00 deductible is met.

The Reliance/Gulf South policy:
The Reliance policy of insurance, bearing the number SJ1652569-02, is a commercial general liability policy with a primary insurance limit of $1,000,000.00. The primary insured in this policy is Gulf South. The policy also names Centex as an additional insured as specified in an endorsement dated March 1, 1995, and includes coverage for "liability arising out of your work, for that insured by or for you." Hence, the policy provides two distinct coverages: (1) it provided coverage directly to Centex as an additional insured for the claims asserted by Mr. Hadley; and (2) it purportedly provided coverage to Gulf South for its contractual obligation to indemnify Centex. Gulf South's contractual obligation to indemnify Centex includes the obligation to pay and/or reimburse Centex for all reasonable attorneys' fees and costs incurred by Centex.
In its first and second assignments of error, Centex asserts that the district court: (1) made the erroneous conclusion that a $1,000,000.00 deductible in an insurance policy issued to it by Travelers "was actually a `certificate of self-insurance;'" and (2) that the district court erred in concluding that the $350,000.00 payment to Mr. Hadley was made by Travelers on behalf of Centex. Centex argues that the district court was both factually and legally incorrect.
Centex contends that its intent regarding the Travelers insurance policy was that the first $1,000,000.00 of insurance coverage for claims arising from the construction of the Harrah's land-based casino, be provided by all insurance policies procured by the subcontractors, all of whom were required to obtain insurance coverage valued no less than $1,000,000.00 and to have Centex named as an additional insured. Centex asserts that the policy provides that Travelers may pay its insured's "damages and allocated loss adjustment expenses," even though the deductible has not been met, and further provides that the insured shall reimburse Travelers for any such parts of the deductible amount paid by Travelers. Hence, Centex asserts that Travelers was not obligated to pay, and has not paid any part of its defense or funded any part of its settlement with Mr. Hadley.
In support of its argument, Centex cites Bowens v. GMC, 92-1307, 92-1322, 608 So.2d 999 (La.1992), for the principle that "provisions of the Insurance Guaranty Association Act must be interpreted to protect claimants and policyholders and to advance their interests rather than the interests of the association." Id. 608 So.2d at 1004, citing Senac v. Sandefer, 418 So.2d 543, 546 (La.1982); Hickerson v. Protective National Ins. Co., 383 So.2d 377 (La.1980).
Centex asserts that it was never self-insured for the claim in the instant matter. *73 It classifies itself as an additional insured under the policy of insurance issued by Reliance to Gulf South and which purportedly provided coverage for the instant matter. Centex maintains that the Travelers policy issued to it merely provides the next layer of coverage and contains a $1,000,000.00 deductible. Centex asserts that it was never self-insured for any part of the claim and that no "certificate of self-insurance" exists. Essentially, Centex argues that its recovery from LIGA as an insureddoes not constitute "double recovery." Centex asserts that Travelers advanced funds on Centex's behalf, and due to Centex's contractual obligation under the policy, that the same funds were ultimately repaid to Travelers by Centex.
Conversely, LIGA attacks Centex's argument that it was not an insured of Travelers by asserting that it is clear that Centex is an insured of Travelers. LIGA avers that Centex chose to have the "large deductible" of $1,000,000.000 as a means of providing insurance.
In the alternative, LIGA agrees with the district court's conclusion that if LIGA was not insured for $1,000,000.00, then Centex was certainly self-insured. Nevertheless, under either scenario, LIGA contends that the Guaranty Association Act was never meant to reimburse a company that purchased a policy of insurance with a $1,000,000.00 deductible because "such an application of the statute would be absurd as it would allow any company to circumvent the spirit and intent of the Guaranty Association Act just by having a large deductible."
In support of its argument, LIGA cites[5]Jackson v. Cockerham, 2002-2493 (La.App. 4 Cir. 5/21/03), 847 So.2d 698. In Jackson, an injured TMSEL bus driver and a passenger brought an action against the defendant truck driver, his employer, and the Louisiana Insurance Guaranty Association (LIGA). LIGA moved for summary judgment seeking enforcement of the LIGA Credit Statute, La. R.S. 22:1386. Id., p. 2, 847 So.2d at 700. The district court granted LIGA's motion for summary judgment and dismissed it from the case. Id. The plaintiffs moved for new trial. Id. However, after TMSEL was added as a necessary party defendant, LIGA again moved for summary judgment. Id., p. 3, 847 So.2d at 700. The district court granted both LIGA's motion for summary judgment and the plaintiffs' motion for new trial. Id. TMSEL appealed. This Court held that the plaintiffs were required to first seek remuneration under the uninsured motorist coverage from the TMSEL insurer prior to seeking recovery from LIGA. Id., p. 7, 847 So.2d at 702.
In the instant matter, the district court issued reasons for judgment which provide in pertinent part:
Centex directly purchased a policy of insurance from Travelers. However, Centex submitted the affidavit of St. Paul/Travelers[6] director Kim Grayson, who testified that the Travelers policy contained a one million dollar deductible.
On January 5, 2005, [Mr.] Hadley was paid $350,000.00 to settle, in full, all of his claims against all of the defendants in this matter. Centex admits that Travelers paid this settlement, but contends that Travelers was only advancing *74 payment for all of Centex's ongoing defense costs, and that Centex had repaid Travelers in the full amount of all such advanced payments.
This Court disagrees. Upon review of the policy, it finds that this one million dollar deductible was actually a "certificate of self insurance" and consequently not subject to LIGA reimbursement La. R.S. 22:2386(A)[22:1386(A)]. Therefore, LIGA's motion for summary judgment is granted.
Our review of the record in the instant matter supports the conclusion reached by the district court. Although Centex asserts that it was not self-insured, the Travelers insurance policy itself supports LIGA's position that the $350,000.00 was a payment applied towards the $1,000,000.00 deductible, and was not a unilateral and onerous settlement expense borne by Centex. Clearly, Centex was aware that the large deductible would have to be satisfied prior to Travelers having to assume any responsibility, as its insurer, in bearing all costs beyond the Centex deductible. It is evident that the claim in the instant matter fell well below the listed policy deductible. Hence, we find that the Traveler's policy was essentially usedto the extent of having such a large deductibleas a self-insurance certificate. We therefore hold that this assignment of error does not have merit.
In its third and final assignment of error, Centex argues that the district court erred in concluding that LIGA was entitled to summary judgment under the provisions of La. R.S. 22:1386(A).[7]
Centex avers that its has two distinct claims against LIGA. The first is against LIGA in its capacity as a direct insured under the Reliance policy which arose out of Mr. Hadley's claims. As to this first claim, Centex argues that Reliance (now LIGA, due to Reliance's insolvency) owes it a duty of defense and coverage in the instant matter.
The second claim asserted by Centex is its cross-claim against Gulf South for contractual defense and indemnity. Centex maintains that Reliance/LIGA provided coverage to Gulf South for Gulf South's contractual obligation to defend and indemnify Centex.
Again, Centex insists that it had no insurance coverage other than the coverage provided by the Reliance policy for the first $1,000,000.00 of the claim. Essentially, Centex argues that the factual premise of LIGA's motion for summary judgment is erroneous. Centex reasserts that it and not Travelers, has borne the entire cost of its defense and has funded the settlement with Mr. Hadley. Centex maintains that there is no double recovery being sought and that the district court erred in concluding that LIGA was entitled to summary judgment on the basis of the alleged duplication of recovery.
In support of its argument, Centex cites Morris v. East Baton Rouge Parish School Bd., XXXX-XXXX (La.App. 1 Cir. 5/1/02), 826 So.2d 46. In Morris, a special education student, who was injured while participating in a field trip practice skating event, and his mother brought suit against the field trip chaperone, the school board, the school board's liability insurer, and the event sponsor. After the suit was filed, the liability insurer became insolvent and LIGA was substituted as a party-defendant in its place. In addition, the plaintiffs settled with the sponsor's insurer. LIGA then filed a motion for summary judgment asserting that it was entitled to a credit and a set-off to prevent the duplication of recovery. The district court granted the *75 motion. The plaintiffs appealed. The Court of Appeal held, inter alia, that: (1) LIGA was entitled to a credit for the amount of settlement actually paid to the plaintiffs, Id. p. 11, 826 So.2d at 54; (2) a subsequent determination of the sponsor's fault might entitle LIGA to a credit greater than the actual proceeds paid in settlement, Id. p. 11, 826 So.2d at 54; and that (3) the student was not an "insured," for purposes of the Louisiana Insurance Guaranty Association Law (LIGAL), under the sponsor's liability policy, Id. p. 12, 826 So.2d at 55.
Centex asserts that Morris, a First Circuit case, supports its position that "any amount payable" by such other insurance within the meaning of the non-duplication of recovery portion of LIGA means amounts actually owed by other insurers as determined by judicial declaration, or by actual payment of those amounts by an insurer. See Morris p. 12, 826 So.2d at 54.
Additionally, Centex refers to the affidavits of Kim Grayson and Glenn Burns,[8] along with other attachments, to establish that no monies are owed to Centex by Travelers under the policy until the $1,000,000.00 deductible has been met. Centex also claims that Travelers has not paid any of the monies that Centex seeks from the other defendants; rather, Centex asserts that Travelers has merely advanced those funds on Centex's behalf and Travelers has been fully reimbursed.
LIGA, who appears in the instant matter as the assumed insurer of Centex due to Reliance's insolvency, reasserts that Travelers provided insurance to Centex. In addition, LIGA asserts that Centex asserted that it was entitled to additional insured status under policies of insurance issued by Fidelity and Casualty Insurance Company, National Union Fire Insurance Company and First Financial Insurance Company. LIGA also reasserts that Centex, pursuant to the Guaranty Association ActLa. R.S. 22:1386(A)as a party who has a claim against another insurance company, must exhaust all coverage under the available policy, prior to proceeding against LIGA.
LIGA asserts that Centex was the general contractor of the Harrah's land-casino and that Centex sub-contracted all of the work for the project, including the hiring or Gulf South to pour the majority of the concrete for the construction of Harrah's Casino.
LIGA argues that after Reliance's insolvency, Centex made the decision to settle Mr. Hadley's claims for $350,000.00 and to seek recovery from LIGA and maintains that Centex was insured for general liability by Travelers under a typical Commercial General Liability policy of insurance.
Additionally, LIGA and Gulf South assert that Travelers issued the $350,000.00 check on behalf of its insured, Centex, and in so doing, LIGA and Gulf South maintain that Travelers settled any and all claims that Mr. Hadley may have had against Centex. Based upon this settlement, LIGA asserts that it filed its motion for summary judgment on both its own and on Gulf South's behalf.
Further, it argues that in Senac v. Sandefer, 418 So.2d 543, 545-546 (La.1982), *76 the Supreme Court held that the purpose of La R.S. 22:1386(A) is to prevent double recovery. LIGA and Gulf South also assert that they are entitled to a dollar-for-dollar credit for any settlement amount paid to Centex in the amount adjudicated against any insured, pursuant to La. R.S. 22:1386(A).
LIGA argues its motion for summary judgment sets forth pursuant to La. R.S. 22:1386(A), that prior to proceeding against LIGA and Gulf South, Centex "must exhaust all its rights under the solvent insurer's policy." Hence, LIGA asserts that any amount it is owed on a covered claim shall be reduced by any amount recovered under a policy issued by a solvent insurer. LIGA also argues that the district court was correct in ruling that Centex had to first exhaust all coverage available under all of its policies, prior to proceeding against LIGA and Gulf South.
LIGA vigorously contends that the district court correctly applied the La. R.S. 22:1386(A), the Guaranty Association Act, despite Centex's assertion that the $350,000.00 used to settle Mr. Hadley's claim was merely a deductible under the Travelers policy. LIGA argues that the statute makes no distinction "between a deductible and a self-insured retention limit" since the "law treats them interchangeably." We agree.
As discussed above, the record in this matter directly supports the judgment and reasons elicited by the district court. The Travelers policy, with its listed $1,000,000.00 deductible, is the best evidence of its terms and conditions. Centex was insured by Travelers and payment was made by Travelers to Mr. Hadley on behalf of Centex, its insured. Based upon the above discussion, we find that considering La. R.S. 22:1386(A), Centex is not entitled to recovery from LIGA and the district court correctly granted LIGA's motion for summary judgment, as there is an absence of genuine issues of material fact which would preclude granting the motion for summary judgment.

DECREE
The judgment by the district court granting LIGA's motion for summary judgment is affirmed.
AFFIRMED.
NOTES
[1] LIGA is the administrator of the Louisiana Guaranty Association Act.
[2] LIGA appears in this suit in two capacities: (1) LIGA appears as the alleged insurer of Gulf South, in which it filed a motion for summary judgment, which forms the basis of this appeal; and (2) LIGA also appears because of Centex's allegations that it was an additional insured under the Reliance policy issued to Gulf South.
[3] La. R.S. 22:1386, titled Nonduplication of recovery, provides in pertinent part:

A. Any person having a claim against an insurer under any provision in an insurance policy, other than a policy of an insolvent insurer which is also a covered claim, shall be required first to exhaust his rights under such policy. Such other policies of insurance shall include but shall not be limited to liability coverage, uninsured or underinsured motorist liability coverage, or both, hospitalization, coverage under self-insurance certificates, coverage under a health maintenance organization or plan, preferred provider organization or plan, or similar plan, and any and all other medical expense coverage. All entities that are prohibited from recovering against the association, as specified in R.S. 22:1379(3)(b), shall also be considered insurers for purposes of this Subsection. As to the association, any amount payable by such other insurance shall act as a credit against the damages of the claimant, and the association shall not be liable for such portion of the damages of the claimant. In the case of a claimant alleging personal injury or death caused by exposure to asbestos fibers or other claim resulting from exposure to, release of, or contamination from any environmental pollutant or contaminant, such claimant must first exhaust any and all other insurance available to the insured for said claim for any policy period for which insurance is available before recovering from the association, even if an insolvent insurer provided the only coverage for one or more policy periods of the alleged exposure.
* * *
D. The association shall have no duty to provide a separate defense at its cost to an insured of an insolvent insurer as to any issue arising out of the coverage of this Section.
[4] In Louisiana Ins. Guar. Ass'n v. Interstate Fire & Cas. Co., 93-0911 (La. 1/14/94), 630 So.2d 759, 761, n. 1, the Supreme Court addressed the issue as to whether an excess insurer must "drop down" into the position of an insolvent primary insurer. The Supreme Court noted that "`drop down' [means] "the minimum threshold of the excess insurance company's obligation is lowered in order to cover the gap in coverage resultant from the primary insurance company' insolvency." 1 Business Insurance Law and Practice Guide § 4.100[1](1991). Drop down coverage "occurs when an insurance carrier of a higher level of coverage is obligated to provide the coverage that the carrier of the immediately underlying level of coverage has agreed to provide." Fred Weber, Inc. v. Granite State Ins. Co., 829 S.W.2d 589, 590 n. 2 (Mo.App. 1992). An excellent survey of cases addressing the drop down coverage issue is found in Annotation, Primary Insurer's Insolvency As Affecting Excess Insurer's Liability, 85 A.L.R.4th 729 (1991).
[5] In its brief, LIGA cites a First Circuit case, Morris v. East Baton Rouge Parish School Bd., XXXX-XXXX (La.App. 1 Cir. 5/1/02), 826 So.2d 46, discussed infra, as "controlling" regarding this issue. However, we note that the First Circuit case is persuasive authority.
[6] As of February 27, 2007, the St. Paul Travelers Companies, Inc. (NYSE: STA), began trading under the name "The Travelers Companies Inc."
[7] See infra, at footnote 3.
[8] Glenn Burns is the Vice President of Centex. In his affidavit, he states that subcontracts between Centex and its various subcontractors, "specifically including Gulf South, were required to provide comprehensive general liability insurance, naming Centex as an additional insured, with policy limits of One Million Dollars per occurrence" and that "the intent of Centex [is] that the policy procured by the subcontractor would provide the first layer of coverage in the amount of One Million Dollars, with the Travelers policy providing coverage in excess of One Million Dollars."