602 So.2d 764 (1992)
Patricia PREJEAN, Plaintiff-Appellee,
v.
DIXIE LLOYDS INSURANCE COMPANY, et al., Defendants-Appellants.
No. 91-1266.
Court of Appeal of Louisiana, Third Circuit.
June 24, 1992.
*765 Louis Corne, Lafayette, for plaintiff/appellee Patricia.
Charles Thompson, Jr., Abbeville, for plaintiff/appellee-Billy.
Julius Grubbs, New Iberia, for defendant/ appellant-LIGA.
Steven Jankower, Lafayette, for defendant/appellee-Liberty Lloyds.
Before LABORDE and KNOLL, JJ., and MARCANTEL,[*] J. Pro Tem.
KNOLL, Judge.
This appeal and that of Billy Deshotel versus Dixie Lloyds Insurance Company, et al., Number 91-1267 of this court, have been consolidated because they involve the same issue. A separate judgment is being rendered by us in Billy Deshotel versus Monica Montet, et al.
These appeals center on the insolvency of Dixie Lloyds Insurance Company (Dixie Lloyds) and Louisiana Insurance Guaranty Association's (LIGA) liability to innocent tort victims. The issue to be resolved is whether LIGA is entitled under LSA-R.S. 22:1386 to a dollar-for-dollar credit against its liability when the injured claimants have received recompense from other solvent insurers which exceeds LIGA's maximum liability under the Dixie Lloyds policy, but nonetheless leaves the claimants only partially recompensed for their injuries. In the present cases, Patricia Prejean and Billy Deshotel, the two claimants, received payment from other solvent insurers in excess of any amount LIGA would have otherwise been liable to pay; nevertheless, because of the severity of the injuries received, neither claimant has been fully compensated. LIGA argued in the trial court that it was no longer liable to the claimants because other solvent insurers paid the claimants each at least $10,000, the maximum it would have been liable to each claimant under the Dixie Lloyds policy. The trial court held that the payment by the other insurers did not cancel LIGA's liability, and it awarded $10,000 to Prejean and $7,000 to Deshotel against LIGA. The trial court also ordered LIGA to pay one-half of all court costs.

FACTS
On September 4, 1989, Deshotel and Prejean, guest passengers in an automobile owned by Monica Montet and driven by Scott Richard, were injured when Richard ran a stop sign and drove the Montet vehicle into a ditch.
The Montet vehicle was insured by Dixie Lloyds which provided coverage of $10,000 per person and $20,000 per accident. On December 20, 1990, Dixie Lloyds was declared insolvent by the Louisiana Commissioner of Insurance.
Prejean and Deshotel instituted separate suits against Dixie Lloyds in March and April 1990, respectively. Later, Deshotel added LIGA as a defendant in February 1991, and Prejean did the same in January 1991. Additionally, Prejean sued Allstate Insurance Company, her UM carrier, and Liberty Mutual Insurance Company, Richard's liability insurer. Deshotel sued Liberty, his UM carrier and also Richard's liability carrier.
Ultimately, Liberty paid Prejean $10,000 as Richard's liability carrier. Allstate also paid $10,000 to Prejean as her UM carrier, together with medical payments of $2,000. Fidelity Fire, the insurer of Prejean's husband, further paid her $1,000 in medical payments. Liberty also paid Deshotel $7,000 as Richard's liability carrier, and as Deshotel's UM carrier paid Deshotel $10,000 and medical payments of $1,000. Despite these payments, it was undisputed that Prejean and Deshotel were not fully recompensed for the severity of the injuries they received as a result of the accident.
*766 Prejean and Deshotel then settled their claims against Liberty and Allstate, and their claims against LIGA were consolidated. Trial was held on stipulated facts; liability was undisputed and it was agreed upon that if LIGA was liable, Prejean would receive $10,000 from LIGA and Deshotel was entitled to $7,000. The trial court, as pointed out hereinabove, ruled in favor of the claimants and against LIGA. This appeal then ensued.

LIGA'S LIABILITY
Initially, LIGA postures its argument by contending that the version of LSA-R.S. 22:1386 in effect at the time of Dixie Lloyds's insolvency was applicable, rather than the version in effect at the time of accident. Under the amended version of LSA-R.S. 22:1386, which became effective after the accident herein, the following language appeared for the first time:
"Any amounts payable by such other insurance [i.e., uninsured or underinsured motorist liability coverage, or both, hospitalization, and other medical expense coverage] shall act as a dollar-for-dollar credit against any liability of the association under this Part."
Under the former version of the statute in effect at the time of the accident such a credit was not provided.
For reasons enunciated infra, we need not determine which version of LSA-R.S. 22:1386 was applicable, finding that under either version the trial court correctly interpreted the statute in light of the legislatively stated purpose of the body of law which created LIGA.
It is well established in law that statutes are construed in such a manner as to effectuate their purpose. Smith v. Cajun Insulation, Inc., 392 So.2d 398 (La.1980), appeal after remand, 434 So.2d 123 (La.App. 5th Cir.1983), writ denied, 435 So.2d 444 (La. 1983), and cases cited therein. When a statute may be interpreted in more than one way, that interpretation which affords a reasonable and practical effect to the entire act is preferred over one which renders part thereof ridiculous or nugatory. Hall v. Rosteet, 247 La. 45, 169 So.2d 903 (1964). A particular statutory provision should be construed along with the remainder of the statute and in connection with all laws on the same subject matter. Melancon v. Mizell, 216 La. 711, 44 So.2d 826 (1950); Fireside Mut. Life Ins. Co. v. Martin, 223 La. 583, 66 So.2d 511 (1953). Furthermore, in construing a statute its intent as deduced from the whole act will prevail over that of a particular part considered separately. Fruge v. Muffoletto, 242 La. 569, 137 So.2d 336 (1962).
LSA-R.S. 22:1376 provides:
"The purpose of this Part [the Guaranty Association Fund] is to provide a mechanism for the payment of covered claims under certain insurance policies to avoid excessive delay in payment and to avoid financial loss to claimants or policyholders because of the insolvency of an insurer, to assist in the detection and prevention of insurer insolvencies, and to provide an association to assess the cost of such protection among insurers."
LSA-R.S. 22:1378 further directs that "[t]his Part shall be liberally construed to effect the purpose under section R.S. 22:1376, which shall constitute an aid and guide to interpretation."
In light of the foregoing, LSA-R.S. 22:1382 provides, in pertinent part, that the guaranty association shall "Be obligated to the extent of the covered claims existing prior to the determination of the insurer's insolvency, or arising after such determination...."
LIGA asserts that under the provisions of LSA-R.S. 22:1386(A), as amended, its liability for payment to claimants is credited dollar-for-dollar with the payments made by other solvent insurers who may be involved in the litigation. Accordingly, it argues that it should not have any liability to either Prejean or Deshotel since each of them received payment from Liberty and Allstate which reached the maximum that it would have been liable under the liability provisions of the Dixie Lloyds policy.
We find that LIGA's interpretation, though perhaps technically correct in light of the isolated wording of LSA-R.S. 22:1386, leads to absurd consequences *767 when read in conjunction with the stated purposes explicitly enunciated by the legislature in its enactment of the guaranty fund act. Utilizing the construction mechanism mandated by LSA-R.S. 22:1378, we cannot reconcile LIGA's interpretation of LSA-R.S. 22:1386 with the guaranty association act, LSA-R.S. 22:1375, et seq., as a whole.
Moreover, under LIGA's assertion, the association would not "[b]e obligated to the extent of the covered claims" under the Dixie Lloyds policy  a direct contravention of the provisions of LSA-R.S. 22:1382. Furthermore, such an interpretation would leave injured claimants, such as Prejean and Deshotel, financially at a loss because of Dixie Lloyd's insolvency  one of the primary ills addressed in the creation of the guaranty association act.
Therefore we find that the trial court correctly applied LSA-R.S. 22:1386 to the facts presented, and properly found LIGA liable for the additional amounts of damages due Prejean and Deshotel.
In making this determination, we point out that we do not comment on that portion of LSA-R.S. 22:1386 which states:
"Such other policies of insurance shall include but shall not be limited to liability coverage, uninsured or underinsured motorist liability coverage, or both, hospitalization, and other medical expense coverage."
No argument was made by any party in either the trial or appellate court on the meaning of this amending language, and from our reading of the records this part of the amendment was not an issue among the litigants.

COURT COSTS
LIGA next contends that the trial court erred in casting it with court costs incurred prior to Dixie Lloyds's insolvency. It relies on LSA-R.S. 22:1379, as amended and in effect at the time LIGA entered the law suit, for the proposition that it cannot be cast with liability for court costs incurred prior to Dixie Lloyds's insolvency.
LSA-R.S. 22:1379(3)(d) as worded at the time Dixie Lloyds was declared insolvent reads as follows:
"`Covered claim' shall not include any claim based on or arising from a preinsolvency obligation of an insolvent insurer, including but not limited to ... court costs, ... or any other expenses incurred prior to the determination of insolvency."
Prior to September 1990, there was no provision limiting LIGA's exposure to court costs.
If a statute merely prescribes the method of enforcing a right which previously existed it is classified as procedural. Guste v. Burris, 417 So.2d 445 (La.App. 1st Cir.1982), reversed on other grounds, 427 So.2d 1178 (La.1983). Procedural matters established by statute can have retroactive effect in the absence of law showing a contrary intention. River Cities Const. v. Barnard & Burk, Inc., 444 So.2d 1260 (La.App. 1st Cir.1983), writs denied, 446 So.2d 1223, 1226 (La.1984).
Since the statute affecting the assessment of court costs against LIGA simply involved the method of allocation, we find that the amended version of LSA-R.S. 22:1379 could be applied to the case at hand even though the accident which precipitated this legal action antedated the amendment of the statute. Accordingly, we find that the trial court erred in failing to cast LIGA with only those court costs incurred after December 20, 1990, the date of Dixie Lloyds' insolvency, and will amend the judgment accordingly.
For the foregoing reasons, the judgment of the trial court is affirmed in all respects, except as follows: IT IS ORDERED ADJUDGED, AND DECREED that court costs incurred prior to December 20, 1990, are assessed to Liberty Lloyds Insurance Company; court costs incurred after December 20, 1990, are assessed equally against Liberty Lloyds Insurance Company and Louisiana Insurance Guaranty Association. Costs of appeal are assessed against Louisiana Insurance Guaranty Association.
*768 AFFIRMED AS AMENDED AND RENDERED.
MARCANTEL, J. Pro Tem., concurs and assigns written reasons.
BERNARD N. MARCANTEL, Judge Pro Tem., concurring.
I respectfully concur in the results of the majority opinion because I believe that a reasonable interpretation of La.R.S. 22:1386 A is that the statute simply reduces LIGA's exposure by requiring the claimant to exhaust other insurance sources. Thus, LIGA is placed in the position of an "excess insurance" carrier.
This interpretation comports with La.R.S. 22:1382  Powers and Duties of the Association.
"A. The association shall:
(1)(a) Be obliged to the extent of the covered claims existing prior to the determination of the insurer's insolvency... but such obligation shall include only that amount of each covered claim ... which is in excess of one hundred dollars and is less than one hundred fifty thousand dollars, per claim, subject to a maximum limit of three hundred thousand dollars per accident or occurrence...."
The policy limitations of the insurance contract still apply and LIGA is still entitled to credit against "covered claims" by other insurance sources, but, if other sources are inadequate to pay the damages, LIGA is obliged to cover the "excess" within the insolvent insurer's policy limits.
NOTES
[*] Judge Bernard N. Marcantel participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.