PLOTKIN, Judge.
Plaintiff, Mary Jo Blackwell, appeals the granting of a motion for summary judgment in favor of defendant, Louisiana Insurance Guaranty Association (LIGA), dismissing plaintiff’s suit. We reverse and remand.
FACTS:
Plaintiff was injured in an automobile accident on February 11, 1991. Jessie Williams, Jr., the driver of the other vehicle, was insured by Protective Casualty Insurance. Protective is now insolvent. Plaintiff sought partial compensation from her insurer, Louisiana Farm Bureau Insurance Company, under the uninsured motorist provision. Farm Bureau tendered the policy limits under its UM coverage of $10,-000 and $5,000 for medical payments, totaling $15,000.
After settling with Farm Bureau, plaintiff sued Williams and LIGA, individually and alternatively as the successor to Protective, seeking additional compensation for her injuries. LIGA filed a motion for summary judgment. The trial court granted the motion for summary judgment, dismissing plaintiff’s claim. Plaintiff appealed.
CREDIT FOR PAYMENTS FROM A COLLATERAL SOURCE:
La.R.S. 22:1386 read at the time of the accident, in pertinent part, as follows:
A. Any person having a claim against an insurer under any provision in an insurance policy other than a policy of an insolvent insurer, which is also a covered claim, shall be required first to exhaust his rights under such policy. Such other policies of insurance shall include but shall not be limited to liability coverage, uninsured or underinsured motorist liability coverage, or both, hospitalization, and other medical expense coverage. Any amounts payable by such other insurance shall act as a dollar-for dollar credit against any liability of the association under this part.
LIGA argues that it is entitled under this section to a dollar-for-dollar credit for any insurance monies paid to the claimant. Thus, because the plaintiff received $15,000 LIGA would be entitled to a credit of $15,-000 against its maximum exposure to plaintiff. LIGA also asserts that since its maximum exposure to plaintiff was only $10,-000, which was the limit of the Protective policy, plaintiff’s settlement with Farm Bureau eliminated LIGA’s potential liability to plaintiff. As support for this argument, LIGA cites Gurley v. Fisher, 598 So.2d 1199 (La.App. 1st Cir.1992), wherein the First Circuit held that LIGA’s liability ended once the plaintiff received payments in excess of the policy limits of the insolvent insurer. LIGA also notes that the Third Circuit reached a contrary conclusion in Prejean v. Dixie Lloyds Insurance Co., 602 So.2d 764 (La.App. 3rd Cir.1992). Be *479 cause we disagree with the constrained reading given § 1386(A) by the First Circuit, we refuse to adopt the holding of Gurley.
Section 1386(A) requires the victim to seek compensation from alternate insurance sources. In addition, it allows LIGA to benefit from any amounts recovered by the victim by giving a credit against LIGA’s liability. When the First Circuit concluded that LIGA’s liability ceased once the victim recovered an amount in excess of the policy limits of the insolvent insurer, it actually reached two separate conclusions. First, it correctly concluded that the limit of LIGA’s liability was the policy limits of the insolvent insurer. However, the First Circuit also concluded that LIGA’s liability began from the first dollar of damages. Under this analysis LIGA’s liability ran concurrent with the solvent insurer’s liability until the policy limit of the insolvent insurer was reached. Then LIGA’s liability ceased. This is a very constrained interpretation of LIGA’s liability, and, as the Third Circuit noted, the result of this reading is absurd and does injury to the purpose of the Guaranty Fund. Prejean, 602 So.2d 764, 766-767.
Clearly, LIGA’s liability is the same as that of the insolvent insurer. In other words, LIGA is liable for the victim’s damages up to the policy limits of the insolvent insurer. Clearly, if there were no alternate sources of insurance available to the victim, LIGA would be liable for all of the victim’s damages up to the policy limits of the insolvent insurer. However, when a solvent insurer is available, the Guaranty Fund partially relieves LIGA of this burden by first requiring the victim to exhaust those other sources. Thus, with the solvent insurer ahead of LIGA, if the victim is fully compensated by the amounts received, there is no liability left for LIGA to cover.
However, if as in this case, the victim is not made whole, then LIGA’s liability begins, as § 1386(A) requires, once the victim has exhausted all other insurance sources. The dollar-for-dollar credit LIGA receives is in the form of having to pay only the remaining amount which would fully compensate the victim. If the amount necessary to fully compensate the victim was less than the policy limits of the insolvent insurer, LIGA’s liability would only extend to that amount. Under such a scenario, LIGA receives a complete credit for the amounts already paid to the victim and the victim receives no duplication of recovery.
In the instant case, Farm Bureau has paid sums totaling $15,000. The plaintiff alleges that she has suffered damages in excess of this amount. Obviously, LIGA receives the benefit of $15,000 having already been paid to the plaintiff in that it is not liable for this portion of the victim’s damages. However, LIGA is liable for these damages which exceed $15,000 up to the policy limits of the insolvent insurer Protective.
This conclusion is supported by the doctrine that statutory provisions must be read in pari materia with other statutes concerning the same subject matter. Melancon v. Mizell, 216 La. 711, 44 So.2d 826 (1950). “Furthermore, in construing a statute its intent as deduced from the whole act will prevail over that of a particular part considered separately.” Prejean, 602 So.2d 764, 766 citing Fruge v. Muffoletto, 242 La. 569, 137 So.2d 336 (1962).
The purpose of the Guaranty Association Fund is clearly outlined in La.R.S. 22:1376, which provides as follows:
The purpose of this Part is to provide a mechanism for the payment of covered claims under certain insurance policies to avoid excessive delay in payment and to avoid financial loss to claimants or policyholders because of the insolvency of an insurer, to assist in the detection and prevention of insurer insolvencies, and to provide an association to assess the cost of such protection among insurers.
La.R.S. 22:1378 states that “[t]his Part shall be liberally construed to effect the purpose under section R.S. 22:1376, which shall constitute and aid and guide to interpretation.” Clearly, the purpose of the Guaranty Fund is to protect tort victims from not being able to receive full compensation due to the insolvency of the tortfea- *480 sor’s insurer. A narrow reading of § 1386(A), such as that posited by the First Circuit in Gurley, frustrates this purpose by restricting the availability of funds to compensate the victim. However, our interpretation adheres to the dictate that we are to read the provisions broadly to effectuate its purpose by requiring LIGA to compensate the victim after the victim has exhausted alternate insurance sources.
NEW LEGISLATION:
LIGA argues that the interpretation just stated was introduced by the legislature by Acts 1992, No. 237 §§ 2 and 3, which became effective June 10, 1992. This act amended section 1386(A) and replaced the dollar-for dollar credit language with the following: “... any amount payable by such other insurance shall act as a credit against the' damages of the claimant and the association shall not be liable for such portion of the damages of the claimant.” Additionally, LIGA points to the statement of the purpose of the act which includes the following: “to amend and reenact R.S. 22:1386(A); ... to remove the dollar for dollar offset used by said association against claimants of insolvent insurers ...” LIGA argues that this amendment indicates that the First Circuit’s interpretation of the law in effect at the time of the accident was correct. LIGA asserts that if the language of the statute were subject to the interpretation which this court advances, then the legislature would not have had to “remove” the dollar-for-dollar language; instead, they would have stated that the new amendment was offered to clarify the provision’s meaning.
Without delving into the reasoning behind the word choice of the legislature, there is an obvious reason for “removing” the dollar-for-dollar credit which LIGA has failed to recognize. The language obviously caused a conflict between the application of the entire scheme and the application of this one section. The confusion is evidenced by the contrary opinions of Gurley and Prejean. Rather than compound and foster future uncertainty, the legislature chose to remove the language and replace it with unambiguous terminology. Therefore, the legislature, in replacing the dollar-for-dollar credit language was merely clarifying the interpretation to be given to the provision.
SUMMARY JUDGMENT:
A summary judgment may be rendered only where no issue of material fact remains to be decided and the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B). In the instant case, because LIGA is liable for the damages in excess of the $15,000 provided by Farm Bureau, there remains a material issue of fact as to the amount of damages suffered by the plaintiff.
CONCLUSION:
Accordingly, the judgment of the trial court granting the motion for summary judgment in favor of the defendant, LIGA, is reversed. This case is remanded to the trial court for a determination of the damages suffered by the plaintiff. All costs of this appeal are assessed against the appel-lee.
SCHOTT, C.J., concurs.