| tYELVERTON, Judge.
The Louisiana Insurance Guaranty Association (LIGA) and H & B Well Service, Inc. (H & B) appealed the trial court’s decision finding them liable for the damages arising out of an automobile accident. They raise issues concerning the trial court’s determinations of fault and the amount of damages, and the manner in which the trial judge applied the statutory limitations on LIGA’s liability.
| ¿FACTS
The suit arose out of a two-vehicle accident that happened on June 25, 1990, on a state highway in Sabine Parish. Ronald Barnes was driving his truck. Lula Williams was driving her ear. Carolyn Knowles was a passenger in the Williams car. The Barnes car, going south, hit spilled diesel fuel on the road surface, went out of control, crossed the two-lane highway, and collided head-on with the Williams’ car. Knowles and Barnes were both injured, Knowles badly.
Knowles sued for damages. Alleging that H & B spilled the diesel fuel and caused the accident, she sued H & B and its insurers, Admiral Insurance Company and Bonneville Insurance Company. After Bonneville was placed in receivership on August 12, 1993, LIGA was made a defendant in its place. Other parties were also sued. Knowles named Barnes and his insurer, Allstate Insurance Company. Travelers Insurance Company, Williams’ liability insurer, became a party in a third-party action. Mr. Knowles added a claim for loss of consortium.
Barnes filed a cross-claim for his own damages. His claim was against H & B and LIGA.
When the case went to trial on the merits, H & B and LIGA were the only defendants left. The others had settled with Knowles and got dismissed. In settlement, Barnes’ insurer paid her $10,000. Williams’ insurer paid her $3,500. H & B’s commercial general liability policy, Admiral, paid her $90,000.
The trial court found that H & B was solely hable for the accident through the operation, use, and/or maintenance of one of its oil field trucks insured by the defunct Bonneville. It found Knowles had special damages of $75,008.20 and general damages of $500,000. The judgment in favor of Knowles against H & B and ¡-¡LIGA was limited to $149,900, LIGA’s statutory limit. Interest, however, was assessed against H & B and LIGA on $575,008.20 from August 12, 1993. The judgment in favor of Barnes against H & B and LIGA was $6,213.17 in special damages and $7,500 in general damages, with interest. H & B and LIGA appealed.
FAULT AND DAMAGES
The trial court’s findings that Barnes was not at fault, and that H & B was, are fully supported by the evidence. Barnes encountered a diesel spill in a curve in the highway. It caused him to lose control and enter the opposite lane. The testimony exonerated him from any fault. There was an abundance of evidence making it more probable than not that an H & B driver caused this spill from off its truck. We find no manifest error in the findings of fault or apportionment (100% to H & B; zero to Barnes). Clement v. Frey, 95-1119, 95-1163 (La. 1/16/96); 666 So.2d 607. We likewise find no abuse of discretion in the assessment of total damages suffered by Knowles and by Barnes. Id.
INTERVENING CAUSE
The remaining three assignments of error require more discussion. One is whether it was the negligent use of H & B’s truck that caused the spill or H & B’s negli *1125 gent failure to clean up the spill that actually caused the accident. This issue is important because H & B had two insurance policies. One was a public liability policy (Bonneville) insuring the operation, use, and/or maintenance of its trucks, and the other was a commercial general liability policy (Admiral). If H & B’s fault in failing to clean up the diesel spill was the intervening cause of the vehicular collision, Uthus insulating Bonneville from any liability, then LIGA would not be responsible at all.
LIGA argues this defense and relies on the case of Tillman v. Canal Insurance Co., 305 So.2d 602 (La.App. 1 Cir.1974), writ denied, 307 So.2d 630 (La.1975). In Tillman the tortfeasor spilled gravel and did not clean it up, and the accident happened six hours later. Tillman was interpreting a single liability policy with alternative coverage provisions, and different limits depending on coverage. The court held that the failure of the tortfeasor to clean up its spill was an intervening act of negligence and an intervening cause of the accident, such that the policy coverage for non-auto related negligence was the proper coverage.
The Tillman decision has been distinguished by decisions citing it. Johns v. State Farm Fire & Cas. Co., 349 So.2d 481 (La.App. 3 Cir.1977) decided that when liability arises from two sources, namely a non-auto related incident as well as an auto related occurrence, there could be coverage under both policies. The case of Duvigneaud v. Government Employees Ins. Co., 363 So.2d 1292 (La.App. 4 Cir.1978), writ denied, 366 So.2d 560 (La.1979), found coverage arising from use of the car when a dog jumped out of an open window of the car and caused an accident with a boy on the street on a motorbike. The court held, distinguishing Tillman, that only a short interval of time passed and that the negligence in failing to secure the animal arose out of the use of the automobile and was covered under the automobile policy. In Mizell v. State, Through La. Dept. of Hwys., 398 So.2d 1136 (La.App. 1 Cir.1980), on rehearing, the court mentioned Tillman and applied an intervening cause theory to find that something else and not the tracking of asphalt on the highway was the cause of the accident, because the tracking of asphalt had been discontinued six Lmonths prior to the accident. The recent case of Yagel v. Sanders, 26,778 (La.App. 2 Cir. 4/5/95); 653 So.2d 170, held that an accident was caused by the use of the truck when lumber came off of the truck and injured a bystander on the side of the road, coverage was appropriate under the liability policy covering the use of vehicles, and a homeowner’s policy which excluded coverage for use of a vehicle did not cover the accident.
In the present case H & B caused the condition on the highway by the use of its truck creating a danger to the traveling public minutes before the accident happened. Its responsibility for the accident was covered by its vehicular policy (Bonneville), and that insurer could not be relieved of responsibility by the intervening conduct of H & B in failing to clean up the oil.
INTEREST
The trial court awarded interest on the total amount of the award to Knowles, $575,008.20, calculated from August 12, 1993 (the date of insolvency) until paid. The court limited the judgment against H & B and LIGA to the statutory limit of $149,900, but added legal interest on the whole amount of the damages after August 12, 1993, plus all court costs. The defendants claim that it was error to award any interest at all, because ány award of interest would increase LIGA’s liability beyond the applicable limit per claim.
We agree. The recent supreme court decision of Prejean v. Dixie Lloyds Ins. Co., 94-2979 (La. 9/15/95); 660 So.2d 836 holds that LIGA’s liability is governed by the law in effect on the date of insolvency. The date of Bonneville’s insolvency in the present case was August 12, 1993. There were statutory limitations |6⅛ effect on that date limiting LIGA’s liability. La.R.S. 22:1382(A)(1)(a)(iii) limited LIGA’s liability to $149,900 per claim. La.R.S. 22:1382(A)(1)(b) provided:
The applicable limit per claim and per accident or occurrence shall be exhaustive of the entire liability of the association under this Part, however arising, without *1126 regard to the nature of or the basis for that liability, except court costs incurred subsequent to the date of insolvency.
Since the total award was in excess of $149,-900 on the claim of Mrs. Knowles, LIGA owes $149,900 as the corpus of the obligation. Prejean, applying La.R.S. 22:1379(3)(d), dictates that LIGA also owes all post-insolvency court costs. La.R.S. 22:1382(A)(1)(b), quoted above, which was added by Act 253 of 1990, expressly allows post-insolvency court costs as the only exception to its rule that the entire liability of LIGA is limited to the applicable limit per claim.[1] Any award of interest |7in the present case would increase LIGA’s entire liability beyond the applicable limit and is not permitted. Accord: Arnold v. Airborne Freight Corporation, 94-1728 (La.App. 1 Cir. 7/18/95); 667 So.2d 1063.
We reject the plaintiff’s contention that the failure to plead this limitation was the failure to plead an affirmative defense, and that LIGA may therefore not avail itself of the benefit of Act 253 of 1990. The statutory limit of liability need not be pleaded to be effective. Brewster v. Santos, 94-1148 (La.App. 4 Cir. 11/30/94); 646 So.2d 486. It is provided by statute and need not be pleaded in order to be available to the appellants.
DUPLICATION OP RECOVERY
The appellants urge that the statutory provisions governing LIGA’s responsibility prohibit plaintiffs from duplication of recovery. The medical expenses of Carolyn Knowles in the amount of $9,918.20 were paid by her own hospitalization insurer, Businessmen’s Assurance Association. Allstate, the automobile liability Isinsurer of Barnes, paid Knowles $10,000. Travelers, the insurer of the vehicle in which Knowles was a passenger, paid $3,500 to Mr. Knowles. Admiral, the commercial general liability insurer of H & B, paid Carolyn Knowles $90,000.
La.R.S. 22:1386, as amended by Act 130 of 1990,[2] provides in pertinent part:
*1127 A. Any person having a claim against an insurer under any provision in an insurance policy, other than a policy of an insolvent insurer which is also a covered claim, shall be required first to exhaust his rights under such policy. Such other policies of insurance shall include but shall not be limited to liability coverage, uninsured or underinsured motorist liability coverage, or both, hospitalization, and other medical expense coverage. As to the association, any amount payable by such other insurance shall act as a credit against the damages of the claimant, and the association shall not be liable for such portion of the damages of the claimant.
The statutory provisions provide for a dollar for dollar offset. Segura v. Frank, 93-1271, 93-1401 (La. 1/14/94); 630 So.2d 714, cert. denied, — U.S. -, 114 S.Ct. 2165, 128 L.Ed.2d 887 (1994). LIGA is entitled to the offset. Gurley v. Fisher, 598 So.2d 1199 (La.App. 1 Cir.1992); Mancuso v. Siegel, 94-525 (La.App. 5 Cir. 11/29/94); 646 So.2d 1200. The judgment in favor of Knowles must be reduced by $109,918.20, | grepresenting the settlements paid by' Businessmen’s Assurance Association, Allstate Insurance Company, and Admiral Insurance Company. The loss of consortium settlement paid to Mr. Knowles by Travelers Insurance Company is not subject to a credit, as it has not been proved that his and his wife’s claim were single claims under the insolvent’s policy. McMahon v. LIGA, 596 So.2d 1384 (La.App. 1 Cir.), writ denied, 604 So.2d 970 (La.1992).
For these reasons the judgment in favor of Carolyn Knowles is amended to $39,981.80. The amended judgment will bear legal interest from August 12, 1993, until paid. LIGA is also cast for all costs after August 12,1993. In all other respects the judgment is affirmed.
AMENDED AND AFFIRMED.

. That this was the intent of the legislature is reflected by the minutes of a March 16, 1990, meeting of the House Commerce Committee considering House Bill No. 485, which became Act 253 of 1990:
On behalf of Representative Ensminger, Mr. Joel Ory and Mr. Ben Day presented House Bill No. 485, which would specify that payment of a claim exhausts the liability of the Louisiana Insurance Guaranty Association. Mr. Day stated that it was always understood that the limit of the association's liability that applies per claim is inclusive of everything. He stated that people have come up with things such as interest on top of claims, costs on top of claims, and penalties and attorneys fees on top of claims. The bill would make it clear that whatever cap applies to a claim, it is inclusive of every type and form of liability that the association has, without limitation. If there is a $150,000 cap on a claim, that is all there is to it, and the association owes nothing else on top of it. This will shrink the exposure of the association per claim.
Representative Donelon elaborated that this meant an absolute cap and that there would be no interest, even on judgments made after payment of a claim. Mr. Day replied that, if he was not mistaken, it would include judgments, too.
Representative Downer asked who would pay the interest if there was a claim for $300,000 and LIGA was responsible for $150,000 of it. Mr. Day responded that as he appreciated it, LIGA’s exposure would only be for $150,000 because it is like an excess insurance policy, but he added that he could not honestly tell him from personal experience because he had never had that situation occur before. Representative Downer asked who would pay the court costs. Mr. Day replied that it was possible for court costs to come out of the $150,000 of LIGA's exposure. Representative Downer remarked that there were ways to get around what the bill intended and one was by a tender of judgment to the registry of the court; that cuts off interest and court costs if the judgment comes in. He added that the plaintiff would have no choice but to go to court. Mr. Ory told the committee members that the reason for the bill was because there is just so much money available and the fund was at the maximum.
Representative Melancon pointed out that without LIGA there would be no claims at all.

. The House Commerce Committee also considered House Bill No. 485, which was part of Act 130 of 1990, and its minutes reflect:
On behalf of Representative Ensminger, Mr. Ben Day and Mr. Joel Ory presented House Bill No. 2026, which would provide for nondu-plication of recovery against the Louisiana Insurance Guaranty Association. Mr. Day explained that the association was designed so that you have to go to any other insurance available to an insured of an insolvent company before coming to the association. Mr. Day told the members that a Louisiana Supreme Court decision had said that uninsured motorist coverage was not included in that provision.
*1127 This bill would include uninsured motorist coverage in the provisions, so that a person would have to go to the uninsured motorist coverage before pursuing a claim against the guaranty fund.