JOY COSSICH LOBRANO, Judge.
| plaintiff, Charles Brown, appeals the May 23, 2014 trial court judgment, granting summary judgment in favor of defendant, Louisiana Insurance Guaranty Association (“LIGA”), and dismissing plaintiffs claims. For reasons that follow, we affirm.
Plaintiff filed a petition for damages, claiming injuries sustained as a result of an August 20, 2012 vehicular collision. Plaintiff alleged that he was proceeding west on North Dorgenois Street in New Orleans, when Relimo Norman-Fuegero negligently drove his vehicle through a stop sign on Lapeyrouse Street, thereby causing the collision. In addition to naming Norman-Fuegero as a defendant, plaintiff also sued LIGA, as successor to the now-insolvent Southern Casualty Insurance Company. Plaintiff alleged that at the time of the accident, Norman-Fuegero was covered under a liability insurance policy issued by Southern Casualty-
LIGA answered plaintiffs petition, asserting, among other defenses, that LIGA and Southern Casualty’s insured, Norman-Fuegero, cannot be liable to ^plaintiff because plaintiff had received Medicaid payments that exceed the per person limit of the Southern Casualty policy, which is $15,000. LIGA further asserted that La. R.S. 22:2062(A) provides that all other applicable insurance must be exhausted before LIGA’s coverage can be reached. Therefore, LIGA argued that any amount payable by LIGA or by the party insured by Southern Casualty must be reduced by the full applicable limits stated in any other insurance policy from which plaintiff is entitled to receive benefits as a result of the alleged accident.
Plaintiff moved for partial summary judgment declaring that: (1) LIGA is not entitled to a credit commensurate with the value of plaintiffs Medicaid benefits; (2) if LIGA is entitled to a credit equal to the value of plaintiffs Medicaid benefits, the credit does not eliminate LIGA’s liability because the value of the Medicaid benefits is less than the total value of plaintiffs damages; and (3) La. R.S. 32:866, known as the “No Pay, No Play” statute, only acts to limit plaintiff from recovering the first $15,000.00 of his damages for bodily injury suffered in the accident, not as a dollar-for-dollar credit against LIGA’s insured’s per person policy limit of $15,000.00.
LIGA filed a motion for summary judgment on the grounds that: (1) the plaintiff has received in excess of $15,000.00 in medical expenses paid by the Medicaid program, and LIGA and Southern Casualty’s insured are entitled to a credit in that amount, which equals or exceeds the per person limit of the Southern Casualty policy covering the defendant insured, Norman-Fuegero; or, alternatively, | a(2) because there was no automobile liability insurance covering plaintiff or the vehicle he was operating at the time of the accident, plaintiff is barred from recovering the first $15,000.00 of bodily injury and the first $25,000.00 of property damage in an action for personal injuries against another driver, and the automobile liability insurance policy issued by Southern Casualty to Norman-Fuegero had a bodily injury claim limit of $15,000.00. Accordingly, LIGA asserted that plaintiffs claims against LIGA are barred by Louisiana’s “No Pay, No Play” law, La. R.S. 32:866(A) & (B).
The trial court heard both motions at a hearing on May 9, 2014, and rendered judgment on May 23, 2014, denying plaintiffs motion for partial summary judgment *1061 and granting LIGA’s motion for summary judgment on the ground that LIGA and Southern Casualty’s insured are entitled to a full credit in the amount of plaintiffs medical expenses paid by the Medicaid program. Because the amount paid by Medicaid on behalf of plaintiff exceeded Norman-Fuegero’s policy limits with Southern Casualty, the trial court dismissed plaintiffs claims. Plaintiff now appeals the May 23, 2014 trial court judgment.
On appeal, plaintiff presents four assignments of error:
(1) The trial court committed legal error by finding that Medicaid benefits are “other insurance” as per the State statutory scheme that grants LIGA a dollar-for-dollar credit for “other insurance;”
(2) If the trial court did not commit legal error by concluding that Medicaid benefits are “other insurance,” the trial court committed legal error by concluding that the credit should be deducted from LIGA’s insured’s per person automobile liability insurance limit even though plaintiff’s Medicaid benefits are undisputedly insufficient to completely compensate plaintiff for all of the damages, general and |4special, that plaintiff suffered because of LIGA’s insured’s negligence;
(3) If the trial court did not commit legal error by concluding that Medicaid benefits are “other insurance,” thereby entitling LIGA to take a credit equal to the amount of Medicaid benefits and that the credit should be applied against the per person automobile liability policy limit, then the trial court erred by failing to hold that federal law preempted the State statute authorizing LIGA to take a credit equal to the value of an injured plaintiffs Medicaid benefits and deduct the credit from the per person limit of LIGA’s insured’s automobile liability insurance; and
(4)The trial court erred as a matter of law by holding that La. R.S. 32:866, known as the “No Pay, No Play” statute, operated not as a bar to plaintiff recovering the first $15,000.00 in damages, but as a $15,000.00 credit against the per person limit of Norman-Fuegero’s automobile liability insurance.
In reviewing summary judgments, an appellate court applies the de novo standard of review, using the same criteria that govern the trial court’s determination of whether summary judgment is appropriate; i.e. whether there is any genuine issue of material fact, and whether the movant is entitled to judgment as a matter of law. Samaha v. Ran, 2007-1726, pp. 3-4 (La.2/26/08), 977 So.2d 880, 882 (citations omitted).
Plaintiff first argues that LIGA is not entitled to a dollar-for-dollar credit for amounts paid by Medicaid on plaintiffs behalf for injuries resulting from the accident at issue. Specifically, plaintiff argues that Medicaid benefits are not “other insurance” as contemplated by La. R.S. 22:2062. The trial court found that LIGA and its insured are entitled to a credit in the amount of the total recovery of the medical expenses paid for by Medicaid for plaintiff’s injuries.
La. R.S. 22:2062 provides as follows:
Is A. (1) Any person having a claim against an insurer shall be required first to exhaust all coverage provided by any other policy, including the right to a defense under the other policy, if the claim under the other policy arises from the same facts, injury or loss that gave rise to the covered claim against the association. The requirement to ex *1062 haust shall apply without regard to whether or not the other insurance policy is a policy written by a member insurer. However, no person shall be required to exhaust any right under the policy of an insolvent insurer or any right under a life insurance policy or annuity.
(2) Any amount payable on a covered claim under this Part shall be reduced by the full applicable limits stated in the other insurance policy, or by the amount of the recovery under the other insurance policy as provided herein. The association and the insured shall receive a full credit for the stated limits, unless the claimant demonstrates that the claimant used reasonable efforts to exhaust all coverage and limits applicable under the other insurance policy. If the claimant demonstrates that the claimant used reasonable efforts to exhaust all coverage and limits applicable under the other insurance policy, or if there are no applicable stated limits under the policy, the association and the insured shall receive a full credit for the total recovery.
(a) The credit shall be deducted from the lesser of the following:
(i) The association’s covered claim limit.
(ii) The amount of the judgment or settlement of the claim.
(iii) The policy limits of the policy of the insolvent insurer.
(b) In no case, however, shall the obligation of the association exceed the covered claim limit of this Part.
(3) If the insured or claimant has a contractual right to claim defense under an insurance policy issued by another insurer, including a self-insurer, the insured or claimant shall first exhaust all rights to indemnity and defense under such policy before claiming indemnity or defense from the association, or the insured of the insolvent insurer. The association’s duty to defend under the policy issued by the insolvent insurer is subject to any other limitation on the duty to defend in this Part. This duty is secondary to the obligation of any other insurer or self-insurer to provide a defense, whose duty to the.claimant is primary.
(4) A claim under a policy providing liability coverage to a person who may be solidarily liable as a tortfeasor with the person covered under the policy of the insolvent insurer that gives rise to the covered 1 ficlaim shall be considered to be a claim arising from the same facts, injury or loss that gave rise to the covered claim against the association.
(5)- For purposes of this Section, a claim under an insurance policy other than a life insurance policy or annuity shall include, but is not limited to:
(a) A claim against a health maintenance organization, a hospital plan corporation, a professional health service corporation or disability insurance policy, liability coverage, uninsured or un-derinsured motorist liability coverage, hospitalization, coverage under self-insurance certificates, preferred provider organization, or similar plan, and any and all other medical expense coverage.
(b) Any amount payable by or on behalf of a self-insurer.
(c) Any claim against persons prohibited from recovering against the association as specified in this Part.
(6) In the case of a claimant alleging personal injury or death caused by exposure to asbestos fibers or other claim resulting from exposure to, release of, or contamination from any environmental pollutant or contaminant, any and all other insurance available to the insured for the claim for all policy periods for which insurance is available • must first be exhausted before recovering from the association, even if an insolvent insurer *1063 provided the only coverage for one or more policy periods of the alleged exposure. Only after exhaustion of all solvent insurer’s total policy aggregate limits for any alleged exposure periods will the association be obligated to provide a defense and indemnification within the obligations of this Part, subject to a credit for the total amount thereof, whether or not the total amount has actually been paid or recovered.
B.Any person having a claim which may be recovered under more than one insurance guaranty association or its equivalent shall seek recovery first from the association of the place of residence of the insured except that if it is a first party claim for damage to property with a permanent location, he shall seek recovery first from the association of the location of the property, and if it is a workers’ compensation claim, he shall seek recovery first from the association of the residence of the claimant. For purposes of this Section, the “residence of the insured” shall be the residence, on the date of insolvency of the insurer or self-insurer, of the first named or primary insured or the state to which the insolvent insurer or self-insurer was or would have been liable for the payment of a surcharge or assessment on the subject insurance policy to an insurance guaranty association or its equivalent. A claimant alleging personal injury or death caused by exposure to asbestos fibers or other claim resulting |7from exposure to, release of, or contamination from any environmental pollutant or contaminant, asserted against the association must either be a domiciliary of the state of Louisiana at the time of the exposure or allege that his exposure to asbestos or other environmental hazard, which is a substantial contributing factor to the physical impairment-upon which the claim is based, occurred in Louisiana. Where more than one claimant is joined, each claimant must independently establish that Louisiana is either his domicile or place in which the alleged exposure occurred.
C. Any recovery under this Part by any claimant not a resident of the state of Louisiana at the time such claim arose, shall not exceed the lesser of the recovery allowed under this Part or that payable by the insurance guaranty association or its equivalent in the claimant’s state of residence. As to the association, any amount payable by the other guaranty association or its equivalent shall act as a credit against the damages of the claimant, and the association shall not be liable for that portion of the damages of the claimant.
D. The association shall have no duty to provide a separate defense at its cost to an insured of an insolvent insurer as to any issue arising out of the coverage of this Section.
This case involves the res nova question of whether La. R.S. 22:2062(A)(2) provides LIGA with a credit in the amount of the total recovery of the medical expenses paid for by Medicaid for plaintiffs injuries. Plaintiff cites other insurance statutes— La. R.S. 22:864 and La. R.S. 22:2055(12) — in support of his argument that Medicaid is not an insurance policy as contemplated under La. R.S. 22:2062; thus, LIGA is not entitled to a credit. We find that reference to' those other statutes is unnecessary in this case -because a section of the statute at issue, La. R.S. 22:2062(A)(5)(a), specifies that a claim under an insurance policy includes a claim against “any and all other medical expense coverage.” Because Medicaid is other medical.expense coverage, we find that for purposes of this statute, amounts paid by Medicaid for plaintiffs care can be applied to the credit allowed to LIGA.
*1064 IsFurther examining the credit provision, we note that the current version of La. R.S. 22:2062, unlike previous versions, includes a separate credit provision, A(2), which was added by the Louisiana Legislature in its 2010 amendment to this statute. Plaintiff argues that it is irrelevant whether LIGA is due a credit for plaintiffs Medicaid benefits because those benefits do not compensate plaintiff for his general damages. However, the cases cited by plaintiff in support of that argument, Blackwell v. Williams, 618 So.2d 477 (La.App. 4 Cir.1993), and Prejean v. Dixie Lloyds Ins. Co., 602 So.2d 764 (La.App. 3 Cir.1992), are not applicable to the instant case because those cases were decided long before the current version of La. R.S. 22:2062 was enacted, and the current version is substantively different from the version in effect when those cases were decided.[1]
Also, contrary to plaintiffs assertion, neither the LIGA statute nor the policy of the insolvent insurer in this case distinguishes between coverage to a LIGA claimant for general and special damages. The insolvent insurer’s policy included separate limits for bodily injury liability and property damage liability, but did not include separate limits for general and special damages. The language in the current version of La. R.S. 22:2062 does not support plaintiffs argument that |9LIGA is still liable to plaintiff for its insured’s per person limit of $15,000.00 because the total value of plaintiffs damages, general and special, exceeds the value of the benefits paid by Medicaid for plaintiffs medical expenses.
Plaintiff also argues that to the extent that Medicaid benefits qualify as “other insurance” under La. R.S. 22:2062, LIGA is still not entitled to a credit equal to the value of plaintiffs Medicaid benefits because federal law mandating that Louisiana implement measures to recoup Medicaid benefits paid because of a third party’s negligence preempts the “other insurance” provisions of La. R.S. 22:2062, if applied as LIGA maintains. Plaintiff contends that 42 U.S.C. § 1396k(a)(l)(A) and 1396a(a)(25)(A)-(B) of the federal Social Security Act preempt LIGA’s claim under La. R.S. 22:2062 because it would allegedly eliminate any potential subrogation claim by Medicaid against LIGA. We agree with LIGA that this argument is not properly before this Court in this appeal as we have no evidence in the record that Medicaid has sought or intends to seek reimbursement from LIGA, and this issue is between LIGA and Medicaid, not LIGA and plaintiff.
Because we find that LIGA is entitled to a credit for the Medicaid benefits paid on plaintiffs behalf, we must determine the amount of the credit allowed to LIGA under La. R.S. 22:2062(A)(2). It is *1065 undisputed that plaintiffs medical bills incurred as a result of the accident exceeded $100,000.00, and Medicaid paid health care providers in excess of $20,000.00 for plaintiffs medical expenses. It is also undisputed that the insolvent insurer’s policy in this case has a per person policy limit of $15,000.00 for bodily injury. La. R.S. 22:2062(A)(2) states that if the claimant used reasonable efforts to exhaust all coverage and limits applicable under the other insurance policy, or if there are no applicable stated limits under |inthe policy, LIGA and the insured shall receive full credit for the total recovery of other insurance. -Because there are no applicable stated limits under Medicaid, LIGA and the insured are entitled to receive full credit for the total recovery of other insurance exhausted, including medical expenses paid by Medicaid for plaintiffs medical care for injuries suffered in the accident.
La. R.S. 22:2062(A)(2)(a) provides that the credit shall be deducted from the lesser of the following:
(i) The association’s covered claim limit.
(ii) The amount of the judgment or settlement of the claim.
(iii) The policy limits of the policy of the insolvent insurer.
The lesser of the above items is the $15,000.00 policy limits of the policy of the insolvent insurer, Southern Casualty. This amount is less than LIGA’s maximum covered claim limit of $500,000.00 per accident (as established by La. R.S. 22:2058(A)(l)(b)(iii)), and although there has been no judgment or settlement of this claim, it is without dispute that the judgment value would be greater than $15,000.00, given the fact that plaintiffs medical expenses for injuries related to the accident exceeded $100,000.00.
LIGA is entitled to credit for the total recovery of the amounts plaintiffs health care providers have received from Medicaid, which exceeds $20,000.00. Deducting plaintiffs total Medicaid recovery from the $15,000.00 policy limits of the Southern Casualty policy leaves a negative balance, thereby extinguishing any liability against LIGA for plaintiffs claim.[2] For that reason, we agree with the trial court that LIGA is entitled to summary judgment dismissing plaintiffs claims In against it.[3]Because the credit allowed to LIGA under La. R.S. 22:2062(A)(2) extinguishes its liability to plaintiff, we need not address plaintiffs final assignment of error regarding the application of Louisiana’s “No Pay, No Play” statute, La. R.S. 32:866.
For the reasons stated above, the trial court judgmeht is affirmed.
AFFIRMED

. The version of La. R.S. 22:1386, the predecessor article to La. R.S. 22:2062, which was in effect at the time of the accident in the Blackwell case, stated, in pertinent part:
Any person having a claim against an insurer under any provision in an insurance policy other than a policy of an insolvent insurer, which is also a covered claim, shall be required first to exhaust his rights under such policy. Such other policies of insurance shall include but shall not be limited to liability coverage, uninsured or underin-sured motorist liability coverage, or both, hospitalization, and other medical expense coverage. Any amounts payable by such other insurance shall act as a dollar-for-dollar credit against any liability of the association under this part.
This version became effective after the accident in Prejean. The version in effect at the time of the accident in Prejean did not include the credit language. However, the Prejean court found that it did not need to determine which version applied because it found that under either version, the trial court correctly interpreted the statute in light of the legislatively stated purpose of the body of law that created LIGA.

. La. R.S. 22:2058(A)(l)(c)(i) states, in pertinent part, that LIGA shall "in no event be obligated to pay a claimant an amount in excess of the obligation of the insolvent insurer under the policy of coverage from which the claim arises.”

. Plaintiff argues that allowing LIGA a credit for the total recovery of plaintiff’s Medicaid benefits against the insolvent insurer's policy limits leads to an absurd result in this case. The facts of this case are unfortunate in that plaintiff suffered serious damages in the accident, the tortfeasor driver had an insurance policy with just $15,000.00 per claim coverage for bodily injury, and the tortfeasor’s insurer became insolvent thereby bringing plaintiff’s claim under the LIGA statute, which allowed LIGA credit for other insurance available to plaintiff, including Medicaid. However, plaintiff’s ability to recover additional damages has also been curtailed by the fact that he failed to procure his own automobile liability insurance with uninsured/underinsured motorist coverage. We have applied the rules set forth in the 2010 amended version of La. R.S. 22:2062 to the facts of this case. It is within the province of the Legislature, not the courts, to make changes to existing statutes.