WILLIAMS, J.
This Court granted an application for supervisory writ filed by the defendant, Louisiana Insurance Guaranty Association ("LIGA"), to review the trial court's judgment denying the defendant's motion for summary judgment. For the following reasons, we conclude the trial court erred. Therefore, we make the writ peremptory and reverse the trial court's judgment.
FACTS
On July 20, 2013, the plaintiff, Alcender Williams, Jr., was walking across the intersection of Grayling Lane and Hawes Street in Monroe, Louisiana. He was injured when he was struck by a vehicle being driven by Eric Davis; the registered owner of the Davis vehicle was Sharon Davis. The plaintiff submitted a claim to Sharon Davis' automobile liability insurer, *1128 Progressive Security Insurance ("Progressive"). Thereafter, the plaintiff and Progressive reached a settlement for the $15,000 policy limit, plus interest, for a total of $15,161.49.
At the time of the accident, the plaintiff resided with his mother, Bernadene Hubbard, and he reserved his rights against her uninsured/underinsured motorist ("UM") insurer, USAgencies Casualty Insurance Company ("USAgencies"), which later became known as Affirmative Casualty Insurance Company ("Affirmative"). Subsequently, the plaintiff submitted a UM claim to USAgencies/Affirmative asserting that the limits of the Progressive policy were insufficient to compensate him for his damages. USAgencies/Affirmative rejected the claim, asserting that the plaintiff was an excluded driver under the policy.
On April 25, 2014, the plaintiff filed a lawsuit against USAgencies/Affirmative for damages and attorney fees on the following grounds: the insurer failed to pay his UM claim under La. R.S. 22:1892 ; the insurer breached its duty of good faith under La. R.S. 22:1973 ; and the insurer engaged in unfair methods of practice under La. R.S. 22:1963. Thereafter, both parties moved for summary judgment. The trial court granted summary judgment in favor of the plaintiff, finding that the plaintiff was entitled to coverage "under the medical payment provision of the policy (at defendant's cost) but not under the uninsured/underinsured provision." Subsequently, the trial court granted the plaintiff's motion for rehearing and granted the "plaintiff's motion for summary judgment as it relates to [the uninsured/underinsured provision] of the policy providing for coverage of plaintiff's damages." Following an appeal by USAgencies/Affirmative, this Court affirmed the trial court's ruling. Williams v. USAgencies Cas. Ins. Co. , 50,185 (La. App. 2 Cir. 9/30/15), 186 So.3d 96.
On April 11, 2016, USAgencies/Affirmative was declared insolvent. As a result of the liquidation of the insurer, LIGA began discharging its obligation with regard to other claims made against USAgencies/Affirmative, as provided in the Louisiana Insurance Guaranty Association Law. On January 31, 2017, the plaintiff filed a supplemental and amended petition adding LIGA as a defendant.
On June 9, 2017, LIGA filed a motion for summary judgment asserting that it was entitled to a statutory credit, pursuant to La. R.S. 22:2062, for the $15,161.49 that was paid to the plaintiff under the Progressive policy. LIGA also argued that its financial obligation to the plaintiff would be extinguished after that credit was applied to the $15,000 maximum that it would be obligated to pay under the UM policy. Accordingly, LIGA argued, there were no genuine issues of material fact and it was entitled to judgment as a matter of law.
Following a hearing, the trial court denied LIGA's motion for summary judgment, stating:
The motion for summary judgment in this matter is denied. Wilson v. Brown, 2005 WL 2204861 (La. Dist. Ct.)
LSA-R.S. 22:2058, Formerly cited as LA R.S. 22:1382
Blackwell vs. Williams , 618 So.2d 477.
This Court granted LIGA's application for supervisory review of that ruling.
DISCUSSION
LIGA contends the trial court erred in denying its motion for summary judgment. LIGA argues that it is entitled to a credit of the $15,000 paid by Progressive pursuant to La. R.S. 22:2062. According to LIGA, the application of that credit would extinguish its obligation to the plaintiff *1129 under the limits of the USAgencies/Affirmative policy. Further, LIGA acknowledges that La. R.S. 22:2062(A) was amended, effective August 1, 2017, to exclude UM policies from the exhaustion and credit requirements. However, LIGA contends the 2017 amendments are prospective only and do not apply to this accident that occurred in 2013.[1]
At the time of the plaintiff's accident and the filing of this lawsuit, La. R.S. 22: 2062(A) provided, in pertinent part:
(1) Any person having a claim against an insurer shall be required first to exhaust all coverage provided by any other policy, including the right to a defense under the other policy, if the claim under the other policy arises from the same facts, injury or loss that gave rise to the covered claim against the association . The requirement to exhaust shall apply without regard to whether or not the other insurance policy is a policy written by a member insurer. However, no person shall be required to exhaust any right under the policy of an insolvent insurer or any right under a life insurance policy or annuity.
(2) Any amount payable on a covered claim under this Part shall be reduced by the full applicable limits stated in the other insurance policy, or by the amount of the recovery under the other insurance policy as provided herein. The association and the insured shall receive a full credit for the stated limits, unless the claimant demonstrates that the claimant used reasonable efforts to exhaust all coverage and limits applicable under the other insurance policy. If the claimant demonstrates that the claimant used reasonable efforts to exhaust all coverage and limits applicable under the other insurance policy, or if there are no applicable stated limits under the policy, the association and the insured shall receive a full credit for the total recovery.
(a) The credit shall be deducted from the lesser of the following:
(i) The association's covered claim limit.
(ii) The amount of the judgment or settlement of the claim.
(iii) The policy limits of the policy of the insolvent insurer.
(b) In no case, however, shall the obligation of the association exceed the covered claim limit of this Part.
* * *
(4) A claim under a policy providing liability coverage to a person who may be solidarily liable as a tortfeasor with the person covered under the policy of the insolvent insurer that gives rise to the covered claim shall be considered to be a claim arising from the same facts, injury or loss that gave rise to the covered claim against the association.
* * *[2 ]
(Emphasis added).
The plaintiff argues that LIGA is not entitled to a credit because the covered *1130 UM claim arose from the same accident, but not from the same facts, injury or loss as the settled claim. According to the plaintiff, a claim against a tortfeasor's liability insurer and the plaintiff's own UM carrier are two distinct and different claims for two distinct and different losses. Further, the plaintiff maintains that LIGA and Progressive are not solidary obligors; therefore, La. R.S. 22:2062(A)(4) does not apply. Consequently, according to the plaintiff, he is entitled to recover from the tortfeasor's insurer (Progressive), as well as his own UM carrier (Affirmative/USAgencies/LIGA).
The interpretation of a statute starts with the language of the statute itself. Louisiana Municipal Assoc. v. State , 2004-0227 (La. 1/19/05), 893 So.2d 809 ; City of Minden v. McDaniel , 41,370 (La. App. 2 Cir. 12/20/06), 945 So.2d 955, writ denied , 2007-0369 (La. 4/5/07), 954 So.2d 141. When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made for the intent of the legislature. La. C.C. art. 9 ; La. R.S. 1:4.
A plain reading of La. R.S. 22:2062(A)(1), as it existed at the time of this accident, clearly provides that the plaintiff was required to "first exhaust all coverage provided by any other policy." The plaintiff did so by seeking payment from Progressive, the tortfeasor's liability insurer, who paid its policy limits in the amount of $15,000, plus interest.
La. R.S. 22:2062(A)(2) provides that the amount payable on the plaintiff's claim "shall be reduced by the full applicable limits stated in the other insurance policy" and that LIGA "shall receive a full credit for the stated limits[.]" Under the version of the statute in existence at the time of the accident, the plaintiff's UM insurer was not exempt from the statutory credit. The legislature could have chosen to except UM coverage from the statute, as it did with life insurance coverage in paragraph (A)(1); however, it did not elect to do so until the 2017 amendment to the statute.
It is undisputed that a plaintiff's UM policy was not specifically excluded from the version of the statute that existed at the time of the accident herein. In Brown v. Norman-Fuegero , 2014-0826 (La. App. 4 Cir. 4/22/15), 165 So.3d 1059, the plaintiff sought payment from an insolvent insurer because his damages were not sufficiently covered by the payment through other coverage. After receiving over $20,000 in medical benefits from Medicaid, the plaintiff filed a lawsuit against the defendant driver and his insolvent liability insurer.
*1131 LIGA answered the lawsuit, asserting that it was not liable to the plaintiff because the plaintiff had received Medicaid payments in an amount that exceeded the per person limit of the insolvent insurer's policy ($15,000). LIGA also maintained that La. R.S. 22:2062(A) provided that all other applicable insurance must be exhausted before LIGA's coverage could be reached. Therefore, according to LIGA, any amount payable by it or by the party insured by the insolvent insurer, must be reduced by the full applicable limits stated in any other insurance policy from which the plaintiff is entitled to receive benefits as a result of the alleged accident.
The plaintiff moved for partial summary judgment, seeking, inter alia , a declaration that LIGA was not entitled to a dollar-for-dollar credit for the amounts paid by Medicaid. In response, LIGA filed a motion for summary judgment, arguing that it was entitled to a credit for the amounts paid by Medicaid. The district court denied the plaintiff's motion and granted the motion filed by LIGA, finding that LIGA and the insolvent insurer were entitled to a credit in the amount of the total recovery of the medical expenses paid for by Medicaid. The plaintiff appealed, arguing that LIGA was not entitled to a credit for the amounts paid by Medicaid. The court of appeal affirmed the district court's ruling, stating:
Further examining the credit provision, we note that the current version of La. R.S. 22:2062, unlike previous versions, includes a separate credit provision, A(2), which was added by the Louisiana Legislature in its 2010 amendment to this statute. Plaintiff argues that it is irrelevant whether LIGA is due a credit for plaintiff's Medicaid benefits because those benefits do not compensate plaintiff for his general damages. However, the cases cited by plaintiff in support of that argument, Blackwell v. Williams, 618 So.2d 477 (La. App. 4 Cir.1993), and Prejean v. Dixie Lloyds Ins. Co. , 602 So.2d 764 (La. App. 3 Cir.1992), are not applicable to the instant case because those cases were decided long before the current version of La. R.S. 22:2062 was enacted, and the current version is substantively different from the version in effect when those cases were decided.[3 ]
* * *
Id. at 1063-1064.[4]
In Dugas v. Derouen , 2001-1397 (La. App. 3 Cir. 7/3/02), 824 So.2d 475, writ denied , 2002-2131 (La. 11/15/02), 829 So.2d 426, the plaintiff filed a lawsuit against the defendant's employer and automobile insurer. The automobile insurer became insolvent and LIGA was named a party defendant.
*1132 Prior to trial, the plaintiff reached a settlement with her UM insurer for $10,000, plus $2,000 in medical benefits. Following a trial, the trial court found that the defendant was 50% at fault in causing the accident and awarded the plaintiff damages in the amount of $90,095.31. The trial court also ordered that the $10,000 the plaintiff had received from her UM carrier be deducted from the award of general damages and that the $2,000 medical benefits previously paid by the UM carrier be deducted from the award of medical expenses.
The defendants appealed, asserting that the trial court erred in subtracting the $10,000 from the general damage award before applying the apportionment of fault. They argued that the $10,000 should have been deducted after the award was reduced by the degree of fault assigned to the defendant. The court of appeal applied La. R.S. 22:1386 and affirmed the trial court's judgment. The Court stated, "This court, in Knowles v. Barnes , 1995-1536 (La. App. 3 Cir. 4/3/96), 671 So.2d 1123, held that payments made by other insurers, which includes uninsured motorist insurers, are to be applied, or credited, to the total damages of the claimant before LIGA's liability could be calculated." Id. at 481.[5]
In the instant case, based on the version of La. R.S. 22:2062 in effect at the time of the accident and when the lawsuit was filed, we find that LIGA is entitled to the credit in the amount of $15,000. Accordingly, we find that the trial court erred in denying the motion for summary judgment filed by LIGA. The judgment of the trial court is hereby reversed and summary judgment is granted.
CONCLUSION
For the reasons set forth herein, the writ application filed by the defendant, Louisiana Insurance Guaranty Association, is hereby granted and made peremptory. The trial court's ruling denying summary judgment is hereby reversed. Costs are assessed to the plaintiff, Alcender Williams, Jr.
WRIT GRANTED AND MADE PEREMPTORY; REVERSED.

No Section of the Revised Statutes is retroactive unless it is expressly so stated. La. R.S. 1:2.

Acts 2017, No. 166, § 1 amended La. R.S 22:2062(A)(1) and enacted La. R.S. 22:2062(A)(2)(c) as follows:
(1) Any person having a claim against an insurer shall be required first to exhaust all coverage provided by any other policy other than his own uninsured or underinsured motorist policy , including the right to a defense under the other policy, if the claim under the other policy arises from the same facts, injury or loss that gave rise to the covered claim against the association. The requirement to exhaust shall apply without regard to whether or not the other insurance policy is a policy written by a member insurer. However, no person shall be required to exhaust any right under the policy of an insolvent insurer or any right under a life insurance policy or annuity.
(2) Any amount payable on a covered claim under this Part shall be reduced by the full applicable limits stated in the other insurance policy, or by the amount of the recovery under the other insurance policy as provided herein. The association and the insured shall receive a full credit for the stated limits, unless the claimant demonstrates that the claimant used reasonable efforts to exhaust all coverage and limits applicable under the other insurance policy. If the claimant demonstrates that the claimant used reasonable efforts to exhaust all coverage and limits applicable under the other insurance policy, or if there are no applicable stated limits under the policy, the association and the insured shall receive a full credit for the total recovery.
* * *
(c) The provisions of this Paragraph shall not apply to uninsured or underinsured motorist policies .
(Emphasis added).

The version of La. R.S. 22:1386, the predecessor article to La. R.S. 22:2062, which was in effect at the time of the accident in the Blackwell case, stated, in pertinent part:
Any person having a claim against an insurer under any provision in an insurance policy other than a policy of an insolvent insurer, which is also a covered claim, shall be required first to exhaust his rights under such policy. Such other policies of insurance shall include but shall not be limited to liability coverage, uninsured or underinsured motorist liability coverage, or both, hospitalization, and other medical expense coverage. Any amounts payable by such other insurance shall act as a dollar-for-dollar credit against any liability of the association under this part.
This version became effective after the accident in Prejean . The version in effect at the time of the accident in Prejean did not include the credit language. However, the Prejean court found that it did not need to determine which version applied because it found that under either version, the trial court correctly interpreted the statute in light of the legislatively stated purpose of the body of law that created LIGA.

FN. 3 in this opinion appears as FN. 1 in Brown , supra .

In Knowles v. Barnes , supra , the plaintiff was injured in an automobile accident. She settled her claims with some insurers and filed a lawsuit against the defendant's insurers. One of the defendant's liability insurers was placed in receivership and LIGA was added as a defendant. The plaintiff's medical insurer paid her medical expenses; the other driver's automobile insurer paid a settlement in the amount of $10,000; and one of the defendant's general liability insurers paid the plaintiff a settlement in the amount of $90,000. LIGA argued that it was entitled to a dollar-for-dollar offset for the amount the plaintiff had received from the other insurers. The court of appeal agreed and found that, pursuant to La. R.S. 22:1386, the "judgment in favor of [the plaintiff] must be reduced by $109,918.20, representing the settlements paid by [the other insurers]." Id. at 1127.